VOLNEY BALL V. JACOB CAMPBELL AND ADOLPH GIL-
BERT, *Late Partners as Campbell & Gilbert.*

IRREGULAR SALE—*Defendant Not Injured By.* Plaintiffs were the opera-
tors of a grain elevator in Minneapolis, in this state, and the defendant,
a farmer, shipped his crop of wheat through plaintiffs' elevator to Kan-
sas City, Mo., in plaintiffs' name, to be put in store and subject to de-
fendant's order. The defendant was to pay certain charges, and have the
privilege of drawing money against the wheat within ten cents of its
value at any given time, and if the margin was not kept up, plaintiffs
could sell the wheat and make themselves secure. The wheat declined
in market value below the margin, and the plaintiffs demanded that the
defendant should make the margin good. He refused, and plaintiffs
sold the wheat at private sale, in good faith, and credited defendant upon
his account with moneys realized therefrom. In a few days, wheat went
much lower, and so remained during the rest of the season. *Held,* That
even if the sale was irregular for the neglect to give notice to the de-
fendant, and constituted a conversion by the plaintiffs of the wheat sold,
the defendant was not injured thereby, as he received the market value
of the wheat at the time of the sale, and he could, if he had so desired,
have replaced his wheat within a reasonable time after the notice of the
sale at less than the price for which it was sold.

*Error from Lincoln District Court.*

ACTION by *Campbell & Gilbert* against *Ball,* to recover
$225.17, with interest. Trial at the April Term of the court
for 1882. A jury was waived, and the cause was submitted
to the court with a request to find the facts specifically and
state its conclusions of law thereon. This was done. The
facts found are as follows:

"1. That the plaintiffs were at the times in question the
owners and operators of a grain elevator in Minneapolis,
Kansas, and the defendant, a farmer of Lincoln county, Kan-
sas; that sometime in July, 1879, the plaintiffs and defend-
ant agreed with each other that the defendant would ship his
crop of wheat through plaintiffs' said elevator to Kansas City,
Mo., in the plaintiffs' name, to be put in store and subject to
defendant's order; that defendant was to pay plaintiffs 1½
cents per bushel for their charge and all the charges in Kan-
sas City, and was to have the privilege of drawing money

12—30 KAS.

against the wheat within about 10 cents of its value at any given time, and if this margin [of 10 cents] was not kept up, plaintiffs could sell the wheat to make themselves secure. These items of charges of Kansas City were mentioned, and defendant was to pay 10 cents interest on all money drawn by him up to date of sale of his wheat, and he to have all rise in market. It was not contemplated at the time of agreement that defendant would draw close up to his margin so that there would ever be anything to pay back by defendant, though it was not affirmatively agreed that such should not be the case.

"2. The wheat was not sold, and needing money, defendant, on February 25, 1880, drew enough, with what he had received before, to come within about $300 of his margin, as the price of wheat stood on that day, (1.08¾.)

"3. Wheat soon after began to decline, and continued in April to decline so much that the plaintiffs, being called upon from Kansas City to put up a margin upon this wheat, called upon the defendant to put up the margin. The margin that he had had was then exhausted by the decline in price. He refused to put up more margin, and plaintiffs, on getting the latest advices, and being in fear as to the future, in good faith, on April 20th, sold defendant's wheat at 90 cents per bushel, and herein claim settlement on that basis. Wheat fluctuated a little about this date of sale, but in a few days went much lower, and so remained during the rest of the season, and after allowing plaintiffs all reasonable and proper charges and expenses as agreed upon, and reckoning the wheat on the basis of such sale of April 20, there was due plaintiffs from defendant on the whole transaction as set up in the several causes of action in the petition, a balance of $223, as of April 20, 1880. The charges of Kansas City found herein are reasonable and proper charges; and, as coming within the original agreement of the parties, are: Freight to Kansas City, inspector's charges, insurance, elevator charges in Kansas City, and storage, and interest on money drawn. That all of said wheat was of grade No. 3."

The court upon the foregoing facts concluded that —

"Plaintiffs are entitled to recover from defendant the sum of $223, with interest at 7 per cent. per annum from April 20, 1880."

Thereon judgment was entered for plaintiffs. *Ball* excepted, and brings the case here.

*Geo. W. Finch,* and *Chas A. Hiller,* for plaintiff in error.

*R. F. Thompson,* and *Johnston & Freeman,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: It appears from the findings of fact that under the contract between the parties to this action, defendant below had the privilege of drawing money against the wheat shipped by him through plaintiffs' elevator to Kansas City, Missouri, to within about ten cents of its value at any given time, but if this margin was not kept up, plaintiffs could sell the wheat to make themselves secure. The defendant, needing money, on February 5, 1880, drew enough from plaintiffs, with what he had received before, to come to within $300 of his margin as the price of wheat stood on that day. Soon after wheat began to decline, and continued in April following to decline so much that the plaintiffs called upon the defendant to put up the margin, it being then exhausted. He refused, and plaintiffs being in fear as to the future price, sold the wheat, in good faith, on April 20, 1880, at 90 cents per bushel, and gave credit to the defendant for the amount realized.

Two things concurred to put the defendant in default: a decline in the market value of the wheat below the margin, and a demand by the plaintiffs that the defendant should make such margin good. The plaintiffs neglected to give notice to the defendant of the time and place of the sale of the wheat. There was no express agreement as to whether plaintiffs should sell the wheat at public or private sale, or whether they should give notice of the time and place of the sale thereof. But, conceding that the sale was irregular on account of the neglect to give notice to the defendant, and that such sale constituted a conversion, we do not perceive that the defendant has any cause of complaint. The wheat sold at 90 cents per bushel. While it fluctuated a little about the date of the sale, in a few days it went much lower, and

so remained during the rest of the season. We suppose from the findings that the wheat was sold at its full value, and as it went much lower in price and remained there, the defendant, instead of being injured, was benefited by the sale. If the defendant had shown that the market value of the wheat at the time of the sale, or within a reasonable time thereafter, exceeded the price for which it was sold, he would be entitled to an additional credit for the difference. (*Shepard v. Pratt*, 16 Kas. 209.) But as he could have replaced the wheat at less than 90 cents per bushel within a reasonable time after notice of the sale, he was not injured. Indeed, instead of being injured, he was benefited by the sale. (*Gruman v. Smith*, 81 N.Y. 25.)

Something is said in the findings about the price of wheat fluctuating a little about the date of sale. But this part of the findings is not sufficiently clear or precise to imply that the same could have been made at a higher price. Counsel suggest that the plaintiffs held the wheat for a long time after it began to decline, for their own benefit, and the responsibility of the loss should lie with them. As the wheat was subject to the defendant's order, and could have been sold under his direction at any time, he cannot complain of the failure to sell at an earlier day. The loss resulting from the decline in the price of wheat must fall upon him — not upon the plaintiffs.

The judgment of the district court will be affirmed.

All the Justices concurring.