HATTIE R. PICKERT, Plaintiff and Respondent, *v.* FRED RUGG, E. J. McMAHON and BEN WALDEN, Defendants and Appellants.

1. **Charge of the Court.**

Instructions of trial judge to jury *held* correct under the evidence.

2. **Conversion—Damages—Highest Market Value.**

To entitle a person to recover the highest market value between the time of the conversion of property and of the rendering of the verdict, he must affirmatively show such facts as establish clearly that he has commenced and prosecuted his action with reasonable diligence. No presumption will be indulged in his favor, and the statute will be strictly construed against him.

3. **Same; Same; Same; Reasonable Diligence in Bringing Action.**

Delay of eleven months in bringing his action, *held* fatal to plaintiff's claim that he had prosecuted his action with reasonable diligence, within the meaning of § 4603, subd. 2, Comp. Laws, giving him the highest market value between the conversion and the verdict, when the action has been prosecuted with reasonable diligence.

**4. Insufficiency of Evidence—Specification of Particulars.**

Sufficiency of the evidence to support the verdict cannot be assailed in the supreme court when in neither the notice of intention to move for a new trial nor the bill of exceptions are the particulars specified wherein the evidence is alleged to be insufficient.

(Opinion Filed September 2, 1890.)

*A*PPEAL from district court, Griggs county; Hon. RODERICK ROSE, Judge.

Messrs. *E. J. & J. P. McMahon* and *J. E. Robinson,* for appellants; *A. C. Davis,* for respondent.

CORLISS, C. J. The plaintiff has been so far successful in her effort to recover the value of wheat unlawfully taken from her possession. The wheat in question was seized by the defendant Walden, as sheriff, under an attachment against Rozell Pickert, the father and general agent of the plaintiff. Defendant McMahon appears to have directed the seizure, acting as attorney for the plaintiff in the action in which the attachment was issued. Defendants do not pretend that they could or do justify under the attachment against plaintiff's father. They do not question plaintiff's ownership of the wheat, but they insist that their liability for the tort was settled by the plaintiff, through her alleged agent, Mr. White. It is against the charge of the trial court on the scope of his powers as agent that the first assignment of error is directed. The court, in substance, charged that the jury must find whether White was the general agent of plaintiff, and whether he had power to settle the plaintiff's cause of action for the conversion of her wheat. Certainly the defendant cannot complain of the submission to the jury of the question whether White was the general agent of the plaintiff. He derived all his authority from the father of plaintiff, who was plaintiff's general agent. There was nothing to show that the general agent could delegate his powers to White. The case is not brought within the provisions of § 4003, Comp. Laws, and any other delegation of power is forbidden by that section. White testified as to his authority as follows: "I have never seen the plaintiff. I was general superintendent of her farm and farming operations during part of the year 1887. All my dealings on the part of the plaintiff have been through her fa-

ther. He acted as her general agent, and gave me chief control under him. My duties were the general supervision of the farm. My authority simply consisted in threshing this wheat, and hauling it to market, and everything of that kind. I had no authority to settle any bills or anything of that kind; but had authority to settle the Rugg account, if I could. I received instructions by telegram from Mr. Pickert to arrange the claim, but not to pay any costs." It is obvious that White had no such general authority in the management of plaintiff's business as would authorize him to compromise a cause of action in her favor arising from the conversion of her property. Nor did the court err, as against defendants, in submitting to the jury the question of White's special authority to settle plaintiff's claim against defendants. Rozell Pickert, plaintiff's general agent, denied that he gave him any such authority. He said: "I never gave White any authority to settle any suits at all. I simply stated in a telegram to White that I would pay these bills to Hope, without costs." Giving White's testimony the most favorable construction, it appears that the fact of special authority to him was a controverted one, and was therefore properly submitted to the jury. But White does not claim that he had any authority to settle plaintiff's claim against defendants for conversion. His power was limited to the adjustment of the Rugg account, which appears to be a claim, not against plaintiff, but against her father.

The third exception to the charge is to that portion of it which, it is claimed, assumes that defendants are liable for the balance of the wheat taken by them, after deducting the amount necessary to settle the Rugg claim and another claim, on which some of plaintiff's wheat was attached, known as the "Starling claim." We find no error in this. The amount of wheat taken, according to the testimony on the part of the plaintiff, was 6,000 bushels. Assuming all that defendants claim as to the amount of wheat necessary to pay these two claims, and that White, with full power, did settle them by turning over a sufficient amount of the wheat attached, there still remained to be accounted for over 2,000 bushels. It was with reference to this testimony that the court charged the jury that they must de-

duct the wheat taken for settlement from whatever amount of wheat the jury should find the defendants had seized. As the verdict was for only $300, it is apparent that the jury have not found for an amount in excess of the value of the balance of the wheat taken according to plaintiff's showing, after deducting all that it is claimed was turned over by plaintiff's agent in settlement of these accounts.

The point that the evidence is insufficient to sustain the verdict is not before us, the defendant not being in position to raise it, because neither in his notice of intention to move for a new trial nor in his bill of exceptions did he specify the particulars in which the evidence is alleged to be insufficient. Comp. Laws, §§ 5081, 5090.

The fifth assignment of error presents the question of the proper measue of damages in actions for conversion. The court instructed the jury that the plaintiff was entitled to recover the highest market price at any time between the conversion and the verdict. This is declared to be the rule, under certain circumstances, by section 4603, subd. 2, Comp. Laws: "The detriment caused by the wrongful conversion of personal property is presumed to be (1) the value of the property at the time of the conversion, with interest from that time; or, (2) where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party." The second subdivision of the foregoing section was interpolated into it by amendment in 1885, (Laws 1885, c. 42.) Prior to that time our Code had established the rule which has the sanction of the best-considered adjudications, and which accords most perfectly with the policy of the law in awarding damages, where the doctrine of exemplary damages has no application—full compensation, without punishment. That rule was embodied in § 1980 of the Civil Code, (§ 4613, Comp. Laws,) which provides: "In estimating damages, the value of property to a buyer or owner thereof deprived of its possession is deemed to be the price at which he might have bought an equivalent thing in the market nearest to the place where the property ought to have been put into his possession, and at such time

after the breach of duty upon which his right to damages is founded as would suffice, with reasonable diligence, for him to make such purchase."

This legislation, and the decisions with which it is in line, ordain the only philosophically correct, the only reasonable, the only just, the only consistent rule of damages in such cases. It recognizes and gives full effect to another doctrine supported by precedent and by reason, *i. e.*, that the party injured must use reasonable diligence to reduce his damages to the lowest possible amount. He cannot consistently allow them to become augmented, and charge the wrong-doer with the excess. This principle is frequently applied in cases where a person injured has suffered his injuries to become aggravated by failing to exercise reasonable care. But the rule is of universal application. 1 Suth. Dam. 237, 238, and cases in note; Wright v. Bank, 110 N. Y. 237, 18 N. E. Rep. 79. A person whose property has been wrongfully taken from him may and should go into the market, within a reasonable time, and purchase like property. He owes this duty to the wrong-doer under the law. It is in his power in this manner to place himself in the position, so far as the future is concerned, which he could have occupied had not the wrong been committed. For the loss to the owner of a chance to sell at the highest intermediate price between the conversion and a reasonable time thereafter, or to compensate him for being compelled to buy at an enhanced price, many of the cases impose upon the wrong-doer, in the owner's favor, the duty of paying this highest intermediate price. But the owner should be granted no greater right, after he has had a reasonable time in which to secure in the market property like that which has been wrested or withheld from him, than he would have possessed had this possession never been disturbed. He should, as to future fluctuations in price, be in no better position than would have been occupied by him had not his rights to the property been interfered with. Had his control of the property not been interfered with, he would have risked loss by depreciation in value, while waiting for a better price. He certainly should not enjoy all the benefits of an advance in value without incurring risk from reduction; and yet precisely this unfair advantage the doctrine of

the highest market value between the conversion and the verdict gives him, and gives him, too, at the expense of the defendant, who may possibly, but not probably, dispose of the property at that value, and thus escape without loss, but who will very likely never receive the price which this rule entitles the owner to recover from him. This doctrine punishes the defendant, and accords to the owner more than fair compensation for his loss. The cases which enunciate the rule that the owner of property of fluctuating value may recover the highest market price within a reasonable time after the conversion are numerous. Gallagher v. Jones, 129 U. S. 193, 9 Sup. Ct. Rep. 335; Baker v. Drake, 53 N. Y. 211; Gruman v. Smith, 81 N. Y. 25; Wright v. Bank, 110 N. Y. 237, 18 N. E. Rep. 79; Brewster v. Van Liew, 119 Ill. 561, 8 N. E. Rep. 842; Ball v. Campbell, 30 Kan. 180, 2 Pac. Rep. 165; Page v. Fowler, 39 Cal. 412.

The rule fixed by our statute, as amended in 1885, will work out absurd results. If suit for conversion be brought immediately after the conversion, and prosecuted with all possible dispatch, the plaintiff may recover the highest market price on the very day of trial, although, from an overcrowded calendar or insufficient judicial facilities, the trial of the cause may be delayed for a period of several years, and notwithstanding the fact that continually from the time of the conversion down to the day of trial, when it suddenly increases in value, the property has been worth much less than when it was taken, and, on the other hand, if the value of the converted property should rise to the highest point so soon after the conversion that the plaintiff would have no opportunity to purchase like property at the value of the converted property when converted, yet, if the owner should unreasonably delay the commencement or the prosecution of his action, he could recover only the value at the time of the taking, although it will not afford him full remuneration, and although in justice he is more entitled to the highest market value in the latter case, where it is denied to him, than in the former case, where it is awarded to him, and although, further, there is no connection between his diligence or want of diligence in prosecuting his suit and indemnity for his loss. In the first case the statutory rule works injustice to the defendant, and in the latter case to

the plaintiff. The supreme court of California criticised the rule established in this state by the amendment of 1885, in the case of Page v. Fowler, 39 Cal. 412. The reasoning of the court is unanswerable: "In many of the cases it is said that the plaintiff will be allowed the highest price intermediate the taking and the trial, if the suit has been commenced within reasonable time, and prosecuted without unreasonable delay, and no intimation is made as to what the rule would be if the suit were not commenced within a reasonable time; but it is evident that the question of damages ought to be the same in either case. The time of the commencement of the action or trial would not seem to have any natural or logical connection or relation to the question of damages; and the question as to whether a suit was or was not commenced within a reasonable time would rarely, if ever, depend upon any fact which would affect the indemnity to which the plaintiff is entitled. The reasonable time mentioned in the cases cannot mean a reasonable time within which to commence the action independently of the question of damages. It must mean a time within which it would be reasonable to allow the plaintiff to take the highest market price as the measure of his damage. In other words, the rule deducible from the authorities is that, in cases affecting property of a fluctuating value where exemplary damages are not allowed, the correct measure of damages is the highest market value within a reasonable time after the property was taken, with interest computed from the time such value was estimated." This opinion was rendered in 1870, and in 1872, in the face of it, California adopted by statutory enactment the same rule as that which has obtained in this jurisdiction since the amendment of 1885. That this rule will work gross injustice is shown by the facts of the California case, and by the fact that, while the wheat in the case at bar was worth 60 cents a bushel when taken, the plaintiff recovered $1.23 a bushel for it under this rule.

What we have said with reference to this rule, touching the injustice it will frequently work, has been said with a view of demonstrating the importance of giving it a strict construction. While the question of reasonable diligence is sometimes a question of fact, yet this court will determine, in the first instance,

whether a suitor has prosecuted his action with such reasonable diligence as entitles him to recover the highest market value between the conversion and the verdict, and he must present a clear case to bring himself within the rule. Whenever the decision depends upon disputed facts, these facts must of course be submitted to a jury, under proper instructions. But what facts constitute this reasonable diligence the court will ordinarily determine, as a question of law; and the court will not aid the litigant in securing the benefit of this rule by indulging any presumption in his favor that he has either commenced or prosecuted his action with reasonable diligence. The burden is on him to establish the facts which, as a matter of law, show that he has exercised such diligence. The undisputed facts in the case are fatal to any pretense of reasonable diligence. The property was converted in November, 1887, and suit was not brought until October, 1888. The property converted was wheat, the value of which is subject to considerable fluctuation. It is true that the statute does not, in so many words, require the plaintiff to institute as well as prosecute his action with reasonable diligence; but the commencement as well as the carrying out of the litigation is clearly within the spirit, and we think also with the letter, of the statute. The policy of the act could be practically defeated if the suitor could wait until nearly the expiration of the statutory time within which he must bring his action without being chargeable with a want of reasonable diligence in the prosecution of his action. In fact the prosecution of an action includes the commencement as well as the conducting of an action, and it was in this sense that the word was employed by the legislature. The action not having been prosecuted with reasonable diligence, the plaintiff was not entitled to recover the highest intermediate market value, and for error of the court in this respect the judgment is reversed, and a new trial ordered. All concur.