(83 N. W. Rep. 245.)

---

FIRST NATIONAL BANK OF FARGO *vs*. RED RIVER VALLEY NATIONAL BANK.

Opinion filed May 23, 1900.

**Directed Verdict—Refusal—Waiver of Error.**

A defendant who wishes to avail himself of error in denying a motion for a directed verdict, made at the close of plaintiff's case, must, in case he thereafter introduces testimony, renew the motion at the close of the case; otherwise the error is waived.

**Presumption of Consideration for Written Instruments.**

Sections 3880, 3881, Rev. Codes, provide that "a written instrument is presumptive evidence of a consideration," and cast the burden of showing a want of consideration upon the party seeking to invalidate or avoid it. It was not error, therefore, to receive a chattel mortgage in evidence, over an objection that it was without consideration; no evidence having been offered or introduced to overcome the statutory presumption of consideration.

**Conversion—Measure of Damages—Highest Market Value.**

The measure of damages recoverable for the wrongful conversion of personal property is fixed by section 5000, Rev. Codes. Under said section the injured party may recover the highest market value at any time between the conversion and verdict, when the action has been prosecuted with reasonable diligence.

**Correct Measure of Recovery.**

*Held*, upon the facts stated in the opinion, that the trial court did not err in permitting plaintiff to recover the highest market value.

**Reasonable Diligence—When a Question of Law.**

Where the facts as to diligence are not in dispute, the question whether a case has been prosecuted with reasonable diligence is one of law, for the court. It is necessary, therefore, in order to secure a review of the determination of the trial court thereon, upon appeal, to bring up on the record and before this court all of the facts upon which such determination was made.

Appeal from District Court, Cass County; *Lauder, J.*

Action by the First National Bank of Fargo against the Red River Valley National Bank of Fargo. Judgment for plaintiff. Defendant appeals.

Affirmed.

*Mills, Resser & Mills,* for appellant.

It is contrary to the intention of the statute, § 5000, Rev. Codes, that the plaintiff should, by its own delay in the prosecution of its case, enhance its damages. *Pickett* v. *Rugg,* 1 N. D. 230, 46 N. W. Rep. 446; *First Nat. Bank* v. *Elevator Co.,* 8 N. D. 430, 69 N. W. Rep. 874; *Page* v. *Fowler,* 39 Cal. 412. The chattel mortgage so far as it attempts to secure notes of A. B. Thompson, made prior to the giving of the mortgage, is without consideration. § 3871, Rev. Codes; *Parker* v. *Morrison,* 46 N. H. 280; *Kansas City Mfg. Co.* v. *Gandy,* 9 N. W. Rep. 569.

*Newman, Spalding & Stambaugh,* for respondent.

Appellant having no right to the possession of the crops in question, cannot urge any defense to the mortgage of Cora A. Thompson. The case was ready for trial at the first jury term of court after the conversion, at which it could with reasonable diligence be placed on the calendar. Greater diligence would have been productive of no results. The law requires no such extraordinary diligence. *Wright* v. *Bank,* 110 N. Y. 249; *Rossum* v. *Hodges,* 1 S. D. 311; *Fromm* v. *Mining Co.,* 61 Cal. 629; § 5094, Rev. Codes.

YOUNG, J. Plaintiff prosecutes this action to recover the value of a quantity of grain, consisting of wheat, oats, barley, and flax, which it claims the defendant took into its possession and converted some time between the 11th day of September, 1896, and the 25th day of February, 1897. The plaintiff bases its right to recover upon a certain chattel mortgage thereon executed by Cora A. Thompson, and dated on March 27, 1896. The plaintiff made a written demand on the defendant for the possession of said grain on February 25, 1897, and the same was refused, and on the same day this action was commenced in the District court of Cass county by the service of a summons and complaint. Defendant served its answer on April 17, 1897, and the plaintiff caused the case to be placed on the trial calendar of said court for the jury term commencing April 28, 1897. The judge of the Third Judicial District Court, wherein said action was pending for trial, was disqualified from presiding, and therefore called in the Honorable W. S. Lauder, judge of the

Fourth Judicial District, by written request, as authorized by section 5179, Rev. Codes, to try the case. The case was tried at the February 9, 1899, term of said court, which was the first jury term of court, at which the cause could be tried by Judge Lauder, since its commencement. The plaintiff recovered a verdict of $1,062.95, and judgment was entered on the verdict. The defendant caused a statement of the case to be settled, embracing specifications of numerous alleged errors of law, which are urged in this court as grounds for reversing the judgment.

It will be necessary, before proceeding to the consideration of the errors assigned in counsel's brief, to state the following preliminary facts: The land upon which the grain in controversy was grown consists of two adjoining quarter sections, situated in Cass county, and about 25 miles from Fargo, where both the plaintiff and defendant banks are located. These lands were school lands, and were sold by the board of university and school lands in 1893, one quarter to R. S. Thompson, and the other to Mary A. Thompson, and the usual sale contracts issued to such purchasers. R. S. Thompson died in 1894, and Mary A. Thompson died in 1895. On March 27, 1896, all of the heirs of the above-named persons joined in a quitclaim deed conveying said premises to Cora A. Thompson. The grain in question was the crop of 1896. It was raised and harvested by tenants under an agreement by which the tenants were to receive one-half of the crop, the seed being furnished by the landlord. The tenants received their share, and that in controversy is the other part. On the 27th day of March, 1897, which was the day she received the quitclaim deed from the heirs, Cora A. Thompson executed and delivered a chattel mortgage to the plaintiff bank upon all her interest in all crops of every name and nature to be grown on said land during said year. This mortgage secured two notes signed by A. B. Thompson, who was the husband of the mortgagor, as follows: One for $294.15, dated February 8, 1895; the other for $255, dated March 27, 1895,—the due date of both being October 1, 1895. Besides the foregoing notes of her husband, the mortgage, in terms, secured "all future advances, loans, or discounts" which said bank might thereafter make to the mortgagor, "and all future indebtedness of said mortgagor to said bank, of every name and nature whatever." It appears that the plaintiff made advances under said mortgage to pay delinquent taxes on the land in question, and also to purchase the seed grain from which the grain in dispute was grown. For these advances Cora A. Thompson gave the plaintiff her personal note. The total amount due upon the two notes of her husband, which are described above, and for the advances for seed and taxes which we have just mentioned, at the date of the verdict, was $1,175.13, which is $112.18 more than the amount of the verdict recovered. The defendant seized the grain in question on September 11, 1896, upon the supposition that it was

the property of A. B. Thompson, the husband, and under a chattel mortgage executed by him on October 1, 1893, covering the crop of 1896.

We now turn to the errors assigned and urged in the brief of appellant's counsel:

First, error is assigned on the court's ruling denying a motion for a directed verdict made at the close of plaintiff's evidence. This assignment need not be considered. The record shows that after the motion was denied the defendant introduced further evidence, and thereafter failed to renew the motion. This court, in an early case, established the rule that error cannot be predicated upon a refusal to direct a verdict at the close of plaintiff's case, when testimony is thereafter offered by the defendant. The error, if any exists, is waived unless the motion is renewed at the close of the testimony. *Bowman* v. *Eppinger*, 1 N. D. 21, 44 N. W. Rep. 1000. See, also, *Colby* v. *McDermont*, 6 N. D. 495, 71 N. W. Rep. 772; *Tetrault* v. *O'Connor*, 8 N. D. 15, 76 N. W. Rep. 225.

Counsel for the defendant requested the trial court to instruct the jury that the plaintiff could not recover for the amount represented by the two A. B. Thompson notes, which are described in the mortgage, upon the ground that as to said notes the mortgage was without consideration. The same question was presented by an objection to the introduction of the notes and chattel mortgage in evidence, and also by an exception to the court's charge to the jury permitting the jury to include said notes in computing the amount secured by plaintiff's chattel mortgage. The court did not err on this point. It is true that the plaintiff offered no independent evidence to establish the existence of a consideration for the mortgage, so far as it relates to these two notes. Neither, on the other hand, was evidence offered by defendant to show that there was no consideration. In that condition of the record, the statutory presumption that there was a sufficient consideration, which attaches to every written instrument, must prevail. Section 3880, Rev. Codes, provides that "a written instrument is presumption of a consideration;" and the next section (3881) provides that "the burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it." No independent proof of consideration was necessary until it was attacked by the defendant by evidence which would overcome the statutory presumption.

In fixing the measure of damages the trial court determined that the plaintiff was entitled to the highest market price of the grain between the date of the alleged conversion and the verdict, without interest, instead of the value of the property at the date of the conversion, with interest thereafter, and, against the defendant's objection, permitted plaintiff to amend its complaint at the trial to increase the amount of its demand for damages to correspond with the highest price of grain during the period between the conversion and verdict, which was stipulated to have been in June, 1898, at

which time wheat, by reason of the Leiter corner, reached the unnatural price of $1.42 per bushel, which was at least twice its value at the date of the conversion. The same question was also raised by objection to evidence of the highest market value, and by an exception to that portion of the charge of the court which fixed the highest market value, without interest, as the measure of damages to govern in case they found for the plaintiff. The several assignments of error predicated upon the foregoing all depend for solution upon the single question whether, upon the record before us, we can say that the trial court erred in fixing the measure of damages. If it did, the amendment to the complaint should not have been allowed, or the evidence complained of received. If, however, it does not appear that the court erred in determining the measure of damages, then it was proper to allow the amendment, and to receive the evidence objected to, and give the instruction of which the defendant complains. The legislature of this state has established a definite rule for measuring damages caused by the conversion of personal property. Section 5000, Rev. Codes, so far as pertinent, reads as follows: "The detriment caused by the wrongful conversion of personal property is presumed to be: (1) The value of the property at the time of the conversion with the interest from that time; or (2) when the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party." This statute has been before us in two previous cases. *Picket* v. *Rugg,* 1 N. D. 230, 46 N. W. Rep. 446, and *First Nat. Bank of Fargo* v. *Minneapolis & N. Elevator Co.,* 8 N. D. 430, 79 N. W. Rep. 874. In *Picket* v. *Rugg* the court took occasion to call attention to the injustice which will necessarily follow in many cases by an application of the rule promulgated by the legislature in the section just quoted, by giving to the injured party not merely compensation for the injury he has suffered, but a right to recover the highest market value up to the time of the verdict, however fictitious that value may be. In the case at bar the recovery for the wheat converted bears no just relation to the damage which the plaintiff suffered. It is a misnomer to call it "compensation." It is largely punishment. But, however averse we may be to the rule, it is the rule which governs; and the plaintiff has an absolute right to recover the highest market price, if it so elects, provided only that it has prosecuted its action with reasonable diligence. Counsel for defendant contends that the court erred in determining that the facts show reasonable diligence in prosecuting the action. In *Pickert* v. *Rugg,* supra, it was held, in accordance with the prevailing opinion of the courts, that, where the facts upon the question of diligence are not in dispute, the question as to whether reasonable diligence has been exercised is ordinarily to be determined by the court, as a question of law; further, that the reasonable diligence required of a suitor relates both to the commencement of the action and the subsequent prosecution. It is ap-

parent, then, that, if an error was made by the trial court in deter-
mining the measure of damages, it was an error of law; and in this
case the error must consist, if there was error, in erroneously con-
cluding, from undisputed facts, that plaintiff had commenced and
prosecuted the case with reasonable diligence, within the meaning of
the statute, for there is no pretense or claim that the error com-
plained of arose from a failure to submit disputed facts to the jury
for determination.    So that it is fair to say that the facts upon
which the court acted were undisputed.   We are not fully informed
as to what those facts were.   The statement of the case does not, we
think, purport to embrace all the facts which would be pertinent to
a determination of the question of reasonable diligence, and for
that reason we are in much doubt whether the defendant is in a
position to urge the error, if error it was, in this court; for it is
evident that our review must of necessity extend to all and the
same facts which the trial court had before it in making its deter-
mination, and, if they do not all appear in the record brought to
this court for the purpose of securing a review, it would seem that
the right to review would not exist.   The question of whether a
case has been prosecuted with reasonable diligence may depend upon
a great variety of facts.   The dates when it was actually commenced
and when it was tried are not the only facts, or always controlling.
A knowledge of the facts upon which his case rests, and of his rights,
by the party injured, his presence or absence from the state at the
time, ease or difficulty in gathering necessary data for commencing
the action, and numerous other matters which will readily occur to
ever practitioner, are or may be important facts in determining the
question whether reasonable diligence has been exercised in com-
mencing and in prosecuting a case.   Further, each case must turn
upon its own facts.   We shall assume, however, in this case, and for
the purposes of this decision, that the record before us contains all
of the facts upon which the trial court based its determination.   The
question, then, is, do they warrant the conclusion that plaintiff has
prosecuted its case with reasonable diligence?   We are of the opinion
that they do.   First, the action was commenced seasonably.   In fact,
so far as the record before us shows, it was commenced on the same
day the conversion actually occurred.    It is true, the grain was
taken from the possession of the tenant on September 11, 1896, and
the action was not commenced until February 25, 1897, which was
more than five months later.   But the demand for possession did
not occur until the last-named date.   There is no evidence before
us that plaintiff had any knowledge that the grain had been taken
by the defendant prior to the day the demand was made.   Nor do
we find anything in the record that warrants us in holding that a
conversion occurred before the demand was made.   It was not taken
from the possession of the plaintiff, but of a tenant at the farm,
some 25 miles from the plaintiff's place of business.   We cannot
assume that the defendant came into posession of the grain in con-
troversy originally unlawfully and in defiance of the plaintiff's mort-

gage. Under the facts presented in the record, it would seem that the conversion occurred when the defendant refused plaintiff's demand for possession, which, as we have seen, was the very day the suit was commenced. Appellant's chief reliance, however, is on the delay which occurred in bringing the case to trial. It was not tried until February 9, 1899, which was almost two years after it was commenced; and it was during this period, namely, in June, 1898, that wheat reached its highest price. We are unable to discover anything in the record which shows that the plaintiff was responsible for this delay, or that it came from any cause which it could control. On the contrary, it is shown that the plaintiff placed the case on the trial calendar at the first term after it was commenced. On account of the disqualification of the judge of the district, the judge of a neighboring district was called in to try the case, and the record emphatically states that such judge tried the case at the earliest time that it was possible for him to do so. The plaintiff's right to the highest market price depends upon its diligence alone, and, if the reasonable diligence which the law requires has been exercised in prosecuting a case,—and we are satisfied it has been in this case,—that right is not defeated by the law's delays, over which the plaintiff has no control. Plaintiff's attitude has been consistent at all stages of the case, in demanding the highest market price. In none of the several amended complaints has it demanded interest.

Error is also assigned on the admission of evidence as to certain advances made by plaintiff to pay interest on the school land. It is not necessary to consider this; for, as we have seen, aside from these items the amount secured by the mortgage at the date of the verdict exceeded the amount of the verdict, so that no prejudice could have resulted to the defendant, even though the interest payment should be held to be not secured by the mortgage. Without them the amount due was greater than the verdict. Finding no error in the record, the judgment of the District Court is affirmed. All concur.