[File No. 6326.]

JOHN KVAME, Respondent, v. FARMERS CO-OPERATIVE EL-
EVATOR COMPANY, a Domestic Corporation, of Simcoe,
North Dakota, Appellant.

(262 N. W. 242.)

Opinion filed August 24, 1935.

*Nels G. Johnson* and *W. H. Stutsman,* for appellant.

*Halvor L. Halvorson,* for respondent.

BURKE, Ch. J.   This is an action in conversion.

At the close of the plaintiff's case defendant moved for a directed verdict, and at the close of all of the testimony both parties moved for directed verdict.   The court said:

"I do not just like to take the case on these motions for directed verdict alone, but if you gentlemen want to agree on the record that the Court take the case and decide the case upon the merits as he sees it, without any prejudice, of course, to any rights of appeal, I will take the whole case and decide it just as though the jury had been waived at the beginning.

"Mr. Halvorson (for the plaintiff): We consent to that.

"The Court: And you, Mr. Johnson?

"Mr. Johnson: Yes, Your Honor.

"The Court: All right, I will take the case on that basis."

The jury was accordingly discharged and the court made findings of fact and conclusions of law favorable to the plaintiff, upon which judgment was entered and the defendant duly appeals from the judgment.

After the statement of the case had been settled, the parties stipulated "that the order and certificate for settlement of the statement of the case dated the 24th day of September, 1934, may be amended to include the following: 'And the defendant and appellant does hereby request and desire that a review of the entire case and a trial de novo be had in the Supreme Court in the above entitled matter.'" The order or certificate for settlement was amended accordingly and such demand for a trial de novo was also included in the specifications of error. From this record it is clear that the parties agreed that the case should be tried by the court without a jury.

There are two causes of action. One upon two storage tickets, dated September 8, 1928 for No. 1 durum, namely: ticket No. 1289 for 1396 bushels and 40 pounds and ticket No. 1305 for 726 bushels and 25 pounds, alleged to have been converted by the defendant. The second cause of action is based upon the alleged conversion of 1426 bushels and 55 pounds dark northern wheat, as represented by ticket dated September 8, 1928 and three small tickets dated September 20, 1928, aggregating 390 bushels and 10 pounds dark northern wheat; also one dated August 26, 1929 for 61 bushels and 45 pounds dark northern wheat.

The plaintiff had this grain stored in defendant's elevator and on the 25th day of April, 1932 the plaintiff testified: "I needed some durum for seed and I went down and asked him (the manager of the elevator) if he had durum that was fit for seed. I had all the storage tickets with me and I intended to get the grain a little later, if he had it. I asked him if he had the kind of durum that I had in the elevator and he said 'No, we haven't got it.' I asked if he knew where I could get it and he said to go over to John Anderson. I went over and he wanted

a dollar a bushel and I didn't feel like paying it. He said he didn't have that kind of durum. Later I caused exhibit 4 to be served upon the manager." Exhibit 4 is the demand for all the grain represented in the first cause of action and an offer to pay the storage on the grain. The manager of the elevator admitted service on the 25th day of April, 1932 and also admits, in writing, the tender of the storage charges against the grain. He testified that at the time the plaintiff was in the elevator in April they did not have any No. 1 durum; that at the time of admitting service on the written demand they did not have any No. 1 durum, but states that they had common durum they could process and make No. 1 durum or they could buy No. 1 durum at Bantry, North Dakota. He claims there was no tender of actual cash for storage. He offered to process the common durum or get the No. 1 durum from Bantry; but the plaintiff did not agree to either and he therefore did neither.

Appellant contends that the action of the defendant in April in asking for the wheat and the service of the demand, in writing, did not amount to a demand; that there must be an actual tender of the storage in cash; but there is no merit in this contention.

In Carson State Bank v. Grant Grain Co. 50 N. D. 558, 197 N. W. 146, the court said: "Thus it is plain that the holders of warehouse receipts are owners in common of the grain in the warehouse up to the quantity required to redeem such receipts, and the warehouseman may ship out and sell any quantity from the common mass in excess of that required to redeem outstanding receipts; but if he ships and sells any of the mass above such excess he and the buyer thereof are guilty of conversion to that extent." See also Kastner v. Andrews, 49 N. D. 1059, 194 N. W. 824. In this case the defendant sold all of the No. 1 durum wheat, and accordingly there was a conversion.

In the case of Stutsman v. Cook, 53 N. D. 162, 204 N. W. 976, this court said: "Section 3114, Comp. Laws 1913, makes the storage of grain a bailment and not a sale and provides that such stored grain 'shall at all times, in the event of the failure or insolvency of such bailee, be first applied exclusively to the redemption of outstanding warehouse receipts for grain so stored with such bailee, and, in such event, grain on hand in any particular elevator or warehouse shall first be applied

to the redemption and satisfaction of receipts issued by such warehouse.' . . .

"It may be said that the law, in relation to the storing of grain, implies the right to ship the stored grain out of the state to terminal elevators since it provides that grain of like kind, grade, and quantity, may be delivered to the ticket holder at the warehouse where the same was received or at a terminal elevator but it certainly does not contemplate a sale of the stored grain. The warehouseman who sells stored grain sells it without authority of law and at his peril."

The manager of the elevator did not have No. 1 durum at the terminal or anywhere else and there was, therefore, a conversion. There was a demand, but under the testimony a demand was unnecessary and would be entirely futile as the defendant could not comply with the demand.

Appellant claims that if there was a demand and a conversion that it was waived; that the plaintiff did nothing after the service of his written demand, until July, 1933. There is merit in this contention. On the first of August, 1932 the defendant wrote to the plaintiff a letter describing all the storage tickets, including the rye, durum wheat and other wheat and requested the plaintiff to send all of his tickets by mail and stated, in effect, that they would be received by the elevator company in full payment of the storage. No response was made to this letter by the plaintiff and on the 17th day of August, 1932 the defendant wrote to the plaintiff again as follows:

Aug. 17, 1932

"Mr. John Kvame,
    Minot, N. Dak.
"Dear Sir:

We have been advised by Board of Railroad Commissioners and our auditing Co. we must close out all old outstanding storage tickets or get accrued storage paid so we can issue new tickets in place of the old tickets.

Our record shows you are holder of storage tickets listed below and you are hereby requested within 10 days to pay accrued storage or deliver following storage tickets:

Stge. No. 1057 issued 8-20-1929— 50.30 net Bu. 1 DN. Wht. @ 30c Stge. $ 15.30
Stge. No. 1059 issued 8-20-1929— 54.20 net Bu. 2 DN. Wht. @ 30c Stge.      16.30
Stge. No. 1301 issued 9- 8-1928—1436.55 net Bu. 1 DN. Wht. @ 40c Stge.    574.80
Stge. No. 1289 issued 9-12-1928—1398.40 net Bu. 1 Durum   @ 40c Stge.    559.50
Stge. No. 1305 issued 9-16-1928— 726.25 net Bu. 1 Durum   @ 40c Stge.    290.60

                                        Total              $1456.50

Being these above storage tickets are not worth the accrued storage that is against them it will be advisable for you to sign your above storage tickets and mail them to us and hoping to receive these storage tickets and hear from you at your first convenience, we are,

                                        Very truly yours,"

On receipt of this letter the plaintiff went to the elevator and had a talk with the manager of the elevator. He brought all of his tickets with him, including the tickets for the rye, which are not mentioned in the last letter. He turned over the rye tickets to the defendant. Haaland says "Kvame came into the elevator and said 'I believe I will give you these storage tickets on the rye,' and I said 'that will be alright' and asked for the rest of the storage tickets, durum and wheat and he said 'I believe I will hold that a while. The market may come up and you won't be out so much storage.' I said 'That will be alright but I will have to have them pretty soon.' " When the plaintiff turned over to Haaland the tickets for the rye he said, "I believe I will keep the other tickets, the market may come up." Haaland admits that he said "that will be alright, but I will have to have them pretty soon." Haaland knew at that time that the plaintiff was holding the tickets for a higher market and if he did not have the kind and quantity of grain on hand that the tickets called for it was his duty to replenish and keep in storage the kind and quantity of grain represented by the tickets and the plaintiff had a right to assume that the grain was there; and if not there it would be replenished for the satisfaction of the tickets. The remedy of the elevator company for storage charges was a legal foreclosure of its lien for storage.

According to the plaintiff's testimony, he turned in the rye tickets for the storage and they were accepted in full payment and Mr. Haaland agreed that the plaintiff might hold the tickets for all the wheat including the durum. This agreement, in connection with the lapse of time, cured the conversion of April 25, 1932. The plaintiff held the tickets until July 14, 1933, when he went to the elevator to sell all the grain.

If the kind and quantity of wheat represented by the tickets had been replenished and they had the wheat in the elevator when the plaintiff went there in July, 1933 to sell the grain, the defendant would not be in default. The conversion would have been cured by the action of the parties and the replenishing of the grain. The plaintiff had all the wheat and durum tickets with him at the time he tried to sell the grain in July, 1933 and was told that he didn't have any wheat or grain in the elevator, that it had been foreclosed on and sold for storage. He amended his complaint for the purpose of recovering the highest market price after the date of conversion and before trial, but the court disallowed the amendment as to the durum wheat upon the theory that the action was not promptly instituted after the demand, but allowed the answer as to the other grain.

The defendant had a counterclaim for the storage on the rye. The trial judge found as a fact that the rye tickets were turned in in full payment of the rye and we think that the record fully sustains the trial court's findings. The rye is not mentioned in the letter, exhibit E.

In September, 1932 the defendant attempted to collect storage by foreclosing his warehouseman's lien for storage. A letter describing the storage tickets and stating the amount of defendant's claim for storage was sent to the plaintiff by registered mail. A notice of sale was thereafter posted stating "notice is hereby given that the Farmers Co-operative Elevator Company of Simcoe, North Dakota will sell at public auction the following described storage tickets belonging to John Kvame, to-wit:" then followed a description of the tickets. The defendant did not have the tickets, they were in the possession of John Kvame. The sale was clearly illegal and void.

As stated in Stutsman v. Cook, 53 N. D. 162, 204 N. W. 976, supra, "The warehouse law is for the benefit of the grain farmer. Its object and purpose is to provide for the storing of the farmer's grain to give him an opportunity to hold his grain for the best market and to secure to him the delivery of his grain in like and quantity. The law requires the warehouseman to furnish a bond sufficient in amount to protect outstanding ticket holders. The ticket holder may keep his grain stored indefinitely; when the market is satisfactory to him he is entitled to the delivery of the grain and if the grain is converted, it follows that

he is entitled to the value of the grain at the time he made his demand therefor."

In this case the plaintiff kept his grain in the elevator waiting for a better market. In April, 1932 he only wanted some of the durum wheat for seed, but when he found they didn't have any of the grade he put in the elevator he served a demand for all the durum. This conversion was cured by going to the elevator in August, 1932 and turning over his tickets in payment of storage on the rye and agreeing with the manager of the elevator to keep the storage tickets on all the wheat including the durum and he was within his rights in so doing.

The conversion was on the 14th day of July, 1933, and the plaintiff brought his action promptly, on the 26th day of July, 1933, and was entitled, under the statute, subd. 2, § 7168, Compiled Laws 1913, to the highest market price between the date of the conversion and the date of trial.

Under his amended complaint the plaintiff should have been allowed to prove the highest market value of all the grain, including the durum, between the 14th day of July, 1933, the time of the conversion, and the date of trial. The defendant elevator company is entitled to legal storage, which the plaintiff concedes in his reply to be storage up to the time of the conversion. The plaintiff's complaint does not allege any special value for the No. 1 durum and under the pleadings he is entitled to recover the market price only. He was permitted to show the value of No. 1 durum for seed, but there is no allegation in the complaint under which he could recover a special value for the seed.

The judgment is reversed and a new trial is ordered on all the issues, except the issue on defendant's counterclaim.

BURR, NUESSLE, MORRIS and CHRISTIANSON, JJ., concur.