[File No. 6512.]

JOHN KVAME, Appellant, v. FARMERS CO-OPERATIVE ELEVATOR COMPANY of Simcoe, North Dakota, Respondent.

(281 N. W. 52.)

440

Opinion filed January 15, 1938.   On rehearing July 20, 1938.

*Halvor L. Halvorson* and *Leon W. Halvorson* (of counsel), for appellant.

*Nels G. Johnson* and *W. H. Stutsman,* for respondent.

BURR, J.   This is an action in conversion.   The original complaint set forth two causes of action, alleging the conversion of durum wheat on April 25, 1932 and the conversion of No. 2 and No. 3 dark northern wheat on July 14, 1933.   In the prayer for relief judgment was demanded for the value of the grain on these dates with interest.

The prayer for relief was amended and then plaintiff asked for the highest market value of the dark northern grain between the 14th day of July, 1933 and the date of trial.

The court also permitted the plaintiff to prove a special value for the durum wheat under the theory that he could show its value for seed, but we held on appeal (66 N. D. 54, 262 N. W. 242) that this was error as he had not alleged any special value for the durum "and under the pleadings he is entitled to recover the market price only.   He was permitted to show the value of No. 1 durum for seed, but there is no allegation in the complaint under which he could recover a special value for the seed."   On the appeal we ordered a new trial on all of the issues except that of the defendant's counterclaim.

The case was again tried to the court without a jury; findings of fact and conclusions of law favorable to the defendant were made and judg-

ment entered dismissing the action. Plaintiff appeals demanding a trial de novo in this court.

In the decision on the former appeal we held that "under his amended complaint the plaintiff should have been allowed to prove the highest market value of all the grain, including the durum, between the 14th day of July, 1933, the time of the conversion, and the date of trial."

It is clear from this that we held that under the amended complaint the plaintiff, because of the conversion, could recover the highest market value for the durum as well as for the dark northern.

It is not necessary to set forth all of the facts. No new facts were developed on the second trial which affect the result.

The plaintiff had wheat in storage with the defendant. As pointed out in the former decision, there had been a conversion of this grain on April 25, 1932, which was cured by a settlement made by the parties. That fact was determined on the former appeal.

In September 1932 the defendant attempted foreclosure for the purpose of collecting storage charges, claimed a lien on the storage tickets, and proceeded to foreclose this lien, but the storage tickets were not in its possession but, on the contrary, were in the possession of the plaintiff. On the former appeal we held these foreclosure proceedings "illegal and void." On this appeal respondent does not attempt to controvert these holdings that the first conversion was cured, and that the attempted foreclosure proceedings were void.

The trial court, on this second trial, adopted the theory that though the attempted foreclosure sale of the storage tickets was void, nevertheless thereafter the plaintiff took possession of the grain, exercised dominion over it, and converted it to its use; that this was in September 1932, that plaintiff had notice thereof, and as the action was not commenced until the 26th day of July 1933, there was such delay as precluded the plaintiff recovering the highest market value. This was based on the theory that under the provisions of § 7168, subd. 2, of the Compiled Laws, it is only "when the action has been prosecuted with reasonable diligence" the plaintiff may recover "the highest market value of the property at any time between the conversion and the verdict without interest, at the option of the injured party. . . ."

The notices sent to plaintiff by the defendant with reference to the

attempted foreclosure show that the defendant claimed a lien on the *storage tickets* which the plaintiff had in his possession; that plaintiff was notified the storage tickets would be sold at a time and place specified in the notices. The plaintiff paid no attention to these notices, did not attend the sale, received no notice of any sale of grain, and no claim is made by the defendant that such notice was given him.

On this trial the defendant, while admitting the foreclosure proceedings were void, asserts that as upon the attempted foreclosure of the storage tickets it actually sold the grain, it therefore was guilty of conversion at that time, and, as a natural consequence, the plaintiff had sufficient information to charge him with notice of the conversion of his grain at that time. This contention the trial court upheld.

We cannot agree with this conclusion of the trial court. The case is here for trial de novo, and while the decision of the trial court is entitled to appreciable weight, nevertheless it is quite clear that during all of the attempted foreclosure proceedings the plaintiff was notified that the storage tickets would be sold. He knew they could not be sold for he had them himself in his possession. He never received any notice of an attempt to sell the grain or that the grain would be sold. In fact, he testifies without contradiction that he supposed they had the grain in storage for him at some other elevator.

In Heaton v. Hoerr, 66 N. D. 430, 266 N. W. 261, we show that where the warehouseman sells grain to satisfy the lien for storage without complying with the provisions of the statute, § 3125a33, there is a void sale and therefore conversion which extinguished the plaintiff's lien. Such statute requires a description of the goods against which the lien exists.

The trial court seemed to be of the opinion that because there was an actual conversion of the grain in September 1932 the plaintiff was limited in his remedy to the price of the wheat at that day as the action was not begun until the following July. But mere conversion does not in itself limit the rights of the owner of the grain. He received no notice of the conversion of the grain and was justified in assuming that what the defendant was attempting to do was to sell the storage tickets. Consequently, the rule laid down in Stutsman v. Cook, 53 N. D. 162, 204 N. W. 976, is applicable in this case: "The warehouse law is for the benefit of the grain farmer. Its object and purpose is to provide, for

the storing of the farmer's grain to give him an opportunity to hold his grain for the best market and to secure to him the delivery of his grain in like kind and quantity. The law requires the warehouseman to furnish a bond sufficient in amount to protect outstanding ticket holders. The ticket holder may keep his grain stored indefinitely; when the market is satisfactory to him he is entitled to the delivery of the grain and if the grain is converted, it follows that he is entitled to the value of the grain at the time he made his demand therefor."

In July 1933 plaintiff presented the storage tickets to the elevator for the purpose of selling the grain and at that time received notice that the grain had been sold in September for storage charges. According to the record this is the first notice he received of the conversion of the grain, and he commenced his action within twelve days thereafter.

The record shows that since that time the highest market value of No. 1 durum was $1.36 per bushel, of No. 1 dark northern wheat $1.38 per bushel, of No. 2 dark northern wheat $1.34 per bushel, being in the first three months of 1937. The plaintiff had 2123 bushels 5 lbs. No. 1 durum and 1487 bushels 25 lbs. No. 1 dark northern wheat and 54 bushels 20 lbs. of No. 2 dark northern wheat, with a total value of $5,012.85.

In the former trial it is shown that at the time of the abortive sale in September 1932 the plaintiff received notice from the defendant of its claim for storage figured to that date. On this trial it is not disputed that that was the correct amount up to that time and the plaintiff admits that he is chargeable with the storage up to the demand in July. The plaintiff, therefore, is entitled to judgment against the defendant for $5,012.85, being the highest market value of his grain from the time of conversion to the time of verdict, less the proper storage charges.

The judgment of the lower court is reversed and judgment ordered for the plaintiff in conformity with this opinion.

CHRISTIANSON, Ch. J., and NUESSLE, MORRIS, and SATHRE, JJ., concur.

## (On Rehearing.)

BURR, J. A rehearing was granted to determine the effect of § 7168 of the Compiled Laws, which permits the injured party, at his option,

to recover "the highest market value of the property at any time between the conversion *and the verdict* without interest," when the action has been prosecuted with reasonable diligence.

The date of the conversion is established as July 14, 1933. The action was prosecuted with reasonable diligence. At the close of the case in December 1933 both sides moved for a directed verdict and the court, Judge Buttz presiding, dismissed the jury, making findings of fact and conclusions of law in the main favorable to the plaintiff. Judgment was entered accordingly and the defendant appealed. Upon the appeal the judgment was reversed "and a new trial . . . ordered on all the issues, except the issue on defendant's counterclaim."

On the retrial the case was submitted to the court without a jury, Judge Grimson presiding, and the highest market value of the grain between the time of conversion, the 14th day of July 1933, and the date of this trial is shown beyond dispute, as set forth in the opinion herein.

On this appeal we hold plaintiff is entitled to recover the highest market value of the grain from the date of conversion, to-wit, July 14, 1933; but the question is raised as to whether the highest market value recoverable by the plaintiff is the highest market value between July 14, 1933 and the date of the trial before Judge Buttz, or the highest market value between the date of conversion, July 14, 1933, and the date of the trial before Judge Grimson.

Originally the measure of damages for conversion was ordinarily the value of the property at the time of conversion; but the palpable injustice in cases of property of fluctuating value induced the rule that if the case be prosecuted with reasonable diligence, the owner could recover the highest market value of such property between the time of conversion and the time of trial. See Howton v. Mathias, 197 Ala. 457, 73 So. 92; Sappington v. Rimes, 21 Ga. App. 810, 95 S. E. 316; Early-Foster Co. v. Mid-Tex Oil Mills (Tex. Civ. App.) 208 S. W. 224.

This rule permitting the recovery of the highest market value up to the time of trial became crystallized into statutes, with varying phraseology, but with the same general import. See Comp. Laws, § 7168.

The term "trial" means the trial which is the final determination of the case. Where there have been "two trials," so-called because one trial has been set aside, this first trial is not the "trial" in the legal sense. Where a new trial is granted requiring a retrial, the action is

the same as if it had never been tried. There is but one trial, the proceeding set aside not being the trial. See Benjamin v. Ver Nooy, 168 N. Y. 578, 61 N. E. 971, 972. This term "trial" contemplates the final disposition of the controversy on the facts. Griggs v. Meek, 37 Wyo. 282, 261 P. 126, 129.

The plaintiff, in bringing his action for the conversion of property of fluctuating value, need not specify in his complaint that he is demanding the value at the time of the conversion, or the highest market value, as he is not required to plead the rule of damages. Neither is he precluded from recovering the highest market value up to the time of verdict even though he may have asked at one time for the value of the property at the time of conversion. See Williams v. Gray, 62 Mont. 1, 203 P. 524, 526. Of course, he cannot rely on both rules but must make a choice, but it is the injured party who has the option. That this choice may at times appear to work injustice has been considered by this court from the very first; (see Pickert v. Rugg, 1 N. D. 230, 234, 46 N. W. 446) but, as pointed out in First Nat. Bank v. Red River Valley Nat. Bank, 9 N. D. 319, 323, 83 N. W. 221, "however averse we may be to the rule, it is the rule which governs; and the plaintiff has an absolute right to recover the highest market price, if it so elects, provided only that it has prosecuted its action with reasonable diligence." As pointed out in this case cited, it may be a misnomer to call it "compensation" and that it is largely punishment; but this is the rule which is laid down by the legislature as the measure of damages, and the injured person has the option of choosing the rule for damages.

Without limiting the rule to the narrow meaning of the term "verdict" as the decision of a jury, and considering the term in this case as including the findings of the judge, it is clear that there is but one determinative "verdict" rendered in this case and that was on the second trial. It must be evident that the "verdict" which is the limit for the period of the highest market value is the verdict in the trial which finally decides the case. The statute does not say *a* verdict, but *the* verdict, and in this respect the term is analogous to *the* trial. See Collier v. Gavin, 1 Neb. (Unof.) 712, 95 N. W. 842, 844, for discussion of *the* trial.

In State ex rel. Broadwater Farms Co. v. Broadwater Elevator Co. 61 Mont. 215, 201 P. 687, 692, it is held that the statutory provision

"at the time of verdict" terminated when the case was submitted for decision "where there was no evidence taken after that time." If new evidence was taken so as to justify another verdict, then the verdict which is the limit of measurement of time would be the verdict which finally determined the case. As shown in Earl v. Reid, 32 Neb. 45, 49, 48 N. W. 894, 895, "Where a verdict is set aside, and a new trial granted, the second trial will proceed precisely in the same manner as if no previous trial had been had."

In the case at bar the case was terminated at the trial before Judge Grimson, and therefore the plaintiff was entitled to recover the highest market value from the time of conversion in July 1933 to the date of that trial.

We, therefore, adhere to the decision rendered.

CHRISTIANSON, Ch. J., and NUESSLE and MORRIS, JJ., concur.

SATHRE, J. (concurring specially.) This case was before this court on a former appeal, Kvame v. Farmers Co-op. Elevator Co. 66 N. D. 54, 262 N. W. 242. The opinion of this court in that case fixes the date of the conversion of the grain as of July 14, 1933. A retrial was ordered to permit the plaintiff, under his amended complaint, to prove the highest market value of all the grain, between the 14th day of July, 1933, the time of conversion, and the date of trial. On retrial the defendants introduced testimony, over objection, tending to show that the conversion took place in September 1932. Had such testimony been admissible, I am inclined to the opinion that it was sufficient to establish the date of conversion as of September 1932. On the former appeal, however, the date of conversion was established as of July 14, 1933. I therefore concur in the majority opinion upon the grounds that further evidence on the issue as to the time of conversion was not admissible on the retrial.