[File No. 6353.]

L. E. HEATON, Appellant, v. ANNA V. HOERR, as Administratrix of the Estate of W. G. Hoerr, Deceased, and the Estate of W. G. Hoerr, Deceased, Respondents.

(266 N. W. 261.)

Opinion filed March 25, 1936.

F. E. *McCurdy* and *Alvin C. Strutz,* for appellant.
*Hyland* and *Foster,* for respondents.

NUESSLE, J. This action was brought by the plaintiff L. E. Heaton to recover of the defendant Anna V. Hoerr, as administratrix of the estate of W. G. Hoerr, deceased, a balance claimed to be due for money had and received, for goods sold and delivered, and for storage charges for grain stored in plaintiff's warehouse. The defendant, answering, interposed a qualified general denial to the allegations of the complaint and, counterclaiming, alleged that the plaintiff had in his possession certain grain stored with him by the decedent, and prayed that such grain be adjudged to be the property of the defendant as administratrix of the estate of W. G. Hoerr, deceased, and further alleged that the deceased had sold and delivered certain grains to the plaintiff and his son and prayed judgment in favor of the defendant for the value thereof. The plaintiff, replying, denied the matters and things set out in the counterclaim.

The case was tried to the court without a jury. The court found against the plaintiff in the main action and judgment was ordered and entered dismissing such action. Whereupon the plaintiff perfected the instant appeal asking for a trial de novo in this court pursuant to § 7846, 1925 Supplement to the 1913 Compiled Laws, as amended by chapter 208, Sess. Laws 1933.

The pertinent facts as we sift them from the rather uncertain record appear to be substantially as follows: The plaintiff owned and operated a grain warehouse at McKenzie, Burleigh county, North Dakota. This business was carried on by him individually under the name and style of L. E. Heaton & Son. Plaintiff and his son, L. E. Heaton, Jr., also carried on a livestock business under the partnership name and style of L. E. Heaton & Son. Plaintiff bought, sold, and stored grain at his warehouse. In the conduct of the livestock business more or less of the grain thus bought was used for feeding purposes. The warehouse business was managed by one Johnson. The plaintiff apparently had little to do with this business and knew but little about it. The warehouse business was financed in the usual manner through commission firms at the terminal markets. Plaintiff and his son were also engaged in farming operations which were looked after by the son. W. G. Hoerr owned a number of farms in Burleigh county in the vicinity of McKenzie. He marketed some of

his grain at the plaintiff's elevator at McKenzie. It was his practice to deliver grain to the elevator and take warehouse receipts therefor. These receipts were in the form required by the statutes governing the conduct of grain warehouses. Hoerr apparently was careless in looking after these receipts and held some of them for several years without surrendering the same and selling the grain represented by them. He died in January, 1932. At the time of his death he had in the plaintiff's warehouse at McKenzie, wheat, rye, barley, oats and flax. Some of this grain had been stored there as early as 1924 and the remainder during various years thereafter up until the time of his death. On July 2, 1928, there was a considerable amount of grain so stored. Hoerr went to the warehouse and wanted to sell some of it. He had a disagreement with Johnson as to the storage. However, he obtained $2,700 on the grain represented by eight storage tickets and surrendered the tickets to Johnson. Johnson gave him a check for $2,700 and sent the tickets forward to the commission house which was financing the warehouse business. The storage charges, however, were not paid at that time owing to the disagreement as to the amount thereof. At the price then current for the several sorts of grain represented by the tickets the grain was worth $2,881.65 and the storage then amounted to $273.85. The record says nothing about any further dealings with respect to this matter but a claim was presented to the administratrix of the estate for the difference between the value of the grain, and the storage, plus the $2,700 paid on July 2, 1928, and interest thereon to November 28, 1929. This claim apparently was made on the theory that the $2,700 paid was merely an advancement and that there was no completed sale in July, 1928. Why plaintiff fixes November 28, 1929, as the day of the sale does not appear. In any event, this claim, together with plaintiff's other claims, was duly presented to the administratrix of the Hoerr estate, and with such other claims, which will be hereinafter considered, was disallowed.

Another claim that was presented was for seed rye alleged to have been purchased by Hoerr's tenant on his account in October, 1928, and for seed wheat similarly purchased in April, 1929. At the time the alleged purchases were made, Hoerr had in the elevator on storage both wheat and rye more than sufficient in amount to satisfy the

requirements of his tenant, and in a letter addressed to the elevator he requested the elevator to furnish such seed to the tenant and take it out of the grain he then had on storage. This claim also was disallowed.

The latter part of January, shortly after Hoerr's death, and prior to the appointment of an administrator, the plaintiff attempted to satisfy his warehouseman's lien for storage on the grain held by him under some nineteen tickets. He claimed a lien under the provisions of the Warehouseman's Act, § 3125a27, 1925 Supplement, and attempted to satisfy this lien pursuant to the provisions of the statute, § 3125a33, 1925 Supplement. In that behalf he caused a written notice to be prepared pursuant to the terms of the statute and mailed such notice and demand by registered mail to W. G. Hoerr at Hoerr's last known postoffice address at Mankato, Minnesota, and thereafter proceeded to sell the grain after posting the notice of sale as required by the statute. This sale was held on February 16, 1932. Grain at that time was very low in price, and reckoned at the market on that day the grain thus sold did not realize an amount sufficient to satisfy the storage charges thereon and, subsequently, plaintiff presented his claim for the deficiency to the administratrix. This claim was disallowed.

In 1928 or 1929 the plaintiff in the course of his livestock business purchased some cattle. Among them was a calf. This calf strayed away and returned to one of the Hoerr farms. The plaintiff subsequently made a demand for the calf on the tenant occupying the farm but he refused to turn it over on the ground that he did not know whether it belonged to plaintiff or to Hoerr and the calf remained there for some years. Grown to a steer, it was finally sold by the tenant and the sales price disposed of in the same manner as other cattle belonging to Hoerr. In the meantime, during the intervening years, there had been more or less controversy among the several parties with respect to the ownership of this animal. There is in evidence a letter written by Hoerr indicating that the plaintiff's claim to the steer had been made known to him. In this letter Hoerr said that the matter would be taken up later and disposed of. Apparently nothing was ever done in this regard. This item for the value of the steer was also included in the claim presented to the defendant as administra-

trix and was likewise disallowed. Upon the disallowance of the several claims plaintiff duly brought this action to recover on account thereof.

After a consideration of the record we are of the opinion with respect to the first above mentioned claim—for the balance due for interest and storage on account of the grain which was the subject of the transaction on July 2, 1928—that there was a completed sale of the grain at that particular time, but that the matter of the charge for storage was left for later adjustment. Accordingly the plaintiff is entitled to a recovery for the difference between the amount that was paid to Hoerr, $2,700, plus $273.90, storage charges then accrued, and $2,881.65 the market price of the grain on that day—that is, $92.25, with interest thereon at the legal rate. It follows, of course, that no recovery can be had for interest claimed on the $2,700 paid to Hoerr.

With respect to the plaintiff's claim for seed rye sold to Hoerr in October, 1928, and seed wheat sold in April, 1929, we hold that the plaintiff is entitled to no recovery. At the time of these several transactions Hoerr had in the plaintiff's elevator both wheat and rye much more than sufficient in amount to meet his requirements. His letter to plaintiff which is in evidence was a direction to furnish this seed to his tenant out of Hoerr's grain in the elevator. We infer he did not surrender any tickets at that time. Nevertheless it clearly was his intention at the time he authorized his tenant to procure this seed that it should be taken out of his grain on storage and that intention was evidenced to the plaintiff. Plaintiff had no authority to furnish this seed except in conformity with Hoerr's express direction. Accordingly, we hold, as did the trial court, that there was no sale of grain by the plaintiff for which a recovery can be had.

The third item for which the plaintiff claims a recovery is for storage. The facts with reference to this matter have been stated. Without any further discussion of these facts it is sufficient to say that there was no proper satisfaction of any lien that the plaintiff might have had. The statute, § 3125a33, 1925 Supplement, requires that "The warehouseman shall give a written notice to the person on whose account the goods are held, and to any other person known by the

warehouseman to claim an interest in the goods. Such notice shall be given by delivery in person or by registered letter addressed to the last known place of business or abode of the person to be notified. . . ." At the time of the plaintiff's attempt to satisfy his lien he knew that Hoerr was dead. No administrator had as yet been appointed. He took no steps to procure the appointment of an administrator. Instead he sought to comply with the statute by mailing a notice addressed to the dead man at the latter's last known place of business. Clearly this was not a compliance with the statute. Therefore the sale was void and constituted a conversion. 67 C. J. pp. 556, et seq., and cases cited; Bogle v. Thompson, 230 Ky. 538, 20 S. W. (2d) 173; Weinstein v. Santini Transfer Co. 155 Misc. 139, 278 N. Y. S. 388. Plaintiff's lien was extinguished (Comp. Laws 1913, § 6721) and plaintiff was not entitled to a recovery on account of the deficiency claimed to have resulted.

The last item with which we are concerned is that for the steer which plaintiff claims was sold by Hoerr or his tenant. We think that though the evidence is somewhat meager it can reasonably be said there is sufficient to warrant a finding that the plaintiff was the owner of the steer in question; that it was sold by Hoerr's agent; and that Hoerr received the proceeds of the sale. There is evidence as to the value of the steer and as to the reasonable cost of keeping the same up to the time of the sale. Accordingly we hold the plaintiff is entitled to recover the difference between the value of the steer and the cost of keeping the animal, which we find to be the sum of $70, together with interest thereon from the day of sale.

The judgment entered in the district court was for the dismissal of the action with no recovery for the defendant on the counterclaim. The defendant makes no complaint on account of this judgment. We therefore need not here consider the issues arising under the counterclaim.

The judgment of the district court will therefore be modified and the case remanded with directions that judgment be entered in accordance with this opinion.

BURKE, Ch. J., and MORRIS, CHRISTIANSON and BURR, JJ., concur.