STATE BANK OF TOWNER, a North Dakota Banking Association, Plaintiff and Appellee,

v.

Albert HANSEN and John Doe, Defendants.

Albert HANSEN, Third-Party Plaintiff and Appellant,

v.

Hayden THOMPSON, Third-Party Defendant.

PIONEER STATE BANK, TOWNER, North Dakota, and State Bank of Towner, Towner, North Dakota, North Dakota Banking Associations, Plaintiffs and Appellees,

v.

Albert F. HANSEN, Jr., also known as Albert F. Hanson, Albert Hansen, Albert Hanson, and Frances Hanson, also known as Frances A. Hansen, Frances Hanson, Frances Furnseth, and the State of North Dakota, and the State of North Dakota and Board of University and School Lands, and Farmers Union Oil Co., Inc., and Credit Bureau of Bismarck, and Robert F. Holte, doing business as Credit Adjusters of Dickinson, North Dakota, Defendants and Appellants.

Civ. Nos. 9835, 9836.

Supreme Court of North Dakota.

Feb. 24, 1981.

---

Kenner, Halvorson & Sturdevant, Minot, and John H. MacMaster, Williston, for plaintiff and appellee; argued by Michael G. Sturdevant, Minot.

Mills & Moore, Bismarck, for defendants and third party plaintiff and appellant; argued by Sherry Mills Moore, Bismarck.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for third party defendant.

PEDERSON, Justice.

This case involves a consolidated appeal from the judgments entered in two separate actions filed by the State Bank of Towner (Towner) against Albert Hansen (Hansen) in the District Court of McKenzie County.

In the first action, commenced on January 31, 1977, Towner sought a deficiency judgment against Hansen under Article 9 of the Uniform Commercial Code subsequent to the sale of personal property collateral securing an indebtedness on five promissory notes upon which Hansen allegedly defaulted. On February 19, 1980, upon a jury verdict, Towner was awarded a judgment of $242,366.20 against Hansen as a deficiency judgment on the indebtedness.

In the second action, filed on June 17, 1977, Towner sought to foreclose real property mortgages securing the same promissory notes as were involved in the first action. By this foreclosure, Towner sought to recover any deficiency amount determined by the jury in the first action to be due and owing. By stipulation of counsel, both actions were tried simultaneously at the trial court level. On July 16, 1980, the trial court entered a judgment ordering foreclosure on the mortgages to satisfy the deficiency judgment of $242,366.20. Hansen has appealed from the judgments in both actions, and the appeals have been consolidated for a determination by this Court. We reverse both judgments and remand for a new trial on the merits.

The two actions involved five promissory notes signed by Hansen during 1974 and 1975 with a total face value of $258,218.00.[1] In addition to the notes, Hansen executed a number of security agreements placing his livestock and farm machinery as collateral to secure the indebtedness on the notes, and Hansen also executed a number of mortgages placing certain real property owned by Hansen as security for the indebtedness on the notes. Upon default on the notes, Towner secured a court order to obtain possession of the personal property collater-

---

1. Except the note in the amount of $75,000 dated December 16, 1974, the notes were executed with the Pioneer State Bank as payee. The Pioneer State Bank was closed by order of the state bank examiner on November 26, 1976, and subsequently the five notes were transferred, along with other assets, to the State Bank of Towner. Hansen alleges the $75,000 note was executed with Hayden Thompson as payee and that it was subsequently altered to show Pioneer State Bank as payee. In view of our reversal and remand for a new trial it is unnecessary for this Court to determine the issues raised with respect to the $75,000 note.

al. Towner sold such collateral and then filed an action to recover a deficiency judgment on the indebtedness and also filed a separate action to foreclose the real estate mortgages to satisfy any deficiency judgment obtained.

 Hansen asserts that because Towner chose to proceed against both the personal property collateral and the real property collateral the default provisions of the Uniform Commercial Code do not apply, but rather Towner was required to comply with the real property law in proceeding against both the personal property and real property collateral. Hansen bases his assertion on the following language of Section 41–09–47(4), N.D.C.C., [9–501(4), U.C.C.]:

"4. If the security agreement covers both real and personal property, the secured party may proceed under this part as to the personal property or he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the real property in which case the provisions of this part do not apply."

With respect to this subsection, the official comment of the Uniform Commercial Code drafters states in part:

"The collateral for many corporate security issues consists of both real and personal property. In the interest of simplicity and speed subsection (4) permits, although it does not require, the secured party to proceed as to both real and personal property in accordance with his rights and remedies in respect of the real property. Except for the permission so granted, this Act leaves to other state law all questions of procedure with respect to real property."

We construe this subsection as providing a secured creditor, whose security encompasses both real and personal property, with the option of proceeding against all collateral in a single action providing that he does so in accordance with his rights and remedies accorded by the real property laws. However, we do not construe this subsection to prohibit a secured creditor from commenc-ing separate actions to proceed independently against the personal property collateral and the real property collateral. If the secured creditor chooses to proceed in separate actions the default provisions of the Uniform Commercial Code apply with regard to the personal property collateral. Accordingly, we conclude that the provisions of Article 9 of the Uniform Commercial Code (Chapter 41–09, N.D.C.C.) apply with regard to Towner's proceedings against the personal property collateral.

 Hansen asserts that Towner's sale of the personal property collateral prior to obtaining a judgment on the indebtedness was contrary to law and constituted a conversion of the property. We disagree. Subsection 1 of Section 41–09–50, N.D.C.C., [9–504, U.C.C.], authorizes a secured party, upon default, to dispose of the collateral without benefit of a court judgment:

"1. A secured party after default may sell, lease, or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing."

The personal property collateral consisted of farm machinery and cattle. Upon taking possession of this collateral, the cattle were sold at a livestock auction and the farm machinery was sold through two auctions held for that purpose. Towner concedes that notice was not given to Hansen prior to the sale of any of the collateral. Hansen asserts that as a result of Towner's failure to give him notice of sale it should be barred from receiving a deficiency judgment on the indebtedness.

With respect to giving notice, Subsection 3 of Section 41–09–50, N.D.C.C., [9–504, U.C.C.] provides in relevant part:

"Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by

the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale."

Towner asserts that notice was not required in this case because the collateral was of a type customarily sold on a recognized market. Towner also asserts that the livestock were in poor condition and therefore constituted collateral which was perishable or threatened to decline speedily in value such that notice was not required prior to their sale.

■ We conclude, as a matter of law, that neither the livestock nor the farm machinery collateral involved in this case falls within the category of collateral "customarily sold on a recognized market" so as to be exempted from the notification requirement under Section 41–09–50, N.D.C.C. *See, Maryland National Bank v. Wathen*, 288 Md. 119, 414 A.2d 1261 (1980); *O'Neil v. Mack Trucks, Inc.*, 533 S.W.2d 832 (Tex.Civ. App.1975); reversed on other grounds, 542 S.W.2d 112 (Tex.1976); *Federal Deposit Insurance Corporation v. Farrar*, 231 N.W.2d 602 (Iowa 1975); *Community Management Association of Colorado Springs, Inc. v. Tousley*, 32 Colo.App. 33, 505 P.2d 1314 (1973); *Norton v. National Bank of Commerce of Pine Bluff*, 240 Ark. 143, 398 S.W.2d 538 (1966).

■ In determining that a used car was not collateral of a type customarily sold on a recognized market so as to be exempted from the notice requirement of Section 9–504(3), U.C.C., the Arkansas Supreme Court stated:

"Obviously the Code dispenses with notice in this situation only because the debtor would not be prejudiced by the want of notice. Thus a 'recognized market' might well be a stock market or a commodity market, where sales involve many items so similar that individual differences are nonexistent or immaterial, where haggling and competitive bidding are not primary factors in each sale, and where the prices paid in actual sales of comparable property are currently available by quotation." 398 S.W.2d at 540.

Neither livestock nor farm machinery are sold on markets wherein the price is fixed at any given moment and is free from competitive bidding. To the contrary, competitive bidding is the focal point of the type of auction sales at which this collateral was disposed. A debtor, upon receiving proper notice, might be able to attract additional interested persons to bid up the price of these goods, or he might attend himself and bid at the auction. Thus, the failure to give the debtor notice might very well result in prejudice to him. We agree with the Texas Court of Civil Appeals in *O'Neil, supra* that "the term 'recognized market' within the meaning of the U.C.C. is most restrictive." Only those items of collateral which are commonly sold on a market such as the stock market or the commodity market wherein the price at any given moment is fixed and is free from an individualized competitive bidding process fall within the category of "recognized market" collateral which is exempt from the notice requirement under Section 41–09–50, N.D.C.C., [9–504, U.C.C.].

■ We also conclude, as a matter of law, that the livestock in this case did not constitute collateral which was perishable or threatened to decline speedily in value so as to be exempt from the notice requirement. The testimony of Vince Rettig, an employee at the Sitting Bull auction market located near Williston where the livestock was sold, is undisputed that the livestock were held at the livestock market approximately 18 to 20 days prior to being sold. Consequently, ample opportunity existed between the time Towner took possession of the livestock and the time when the livestock were sold at auction for Towner to have given notice of sale to Hansen.

The case of *United States v. Mid-states Sales Company*, 336 F.Supp. 1099 (D.Neb. 1971) is on point. In *Mid-states, supra*, a priority lienholder sold some cattle without giving notice to a junior lienholder under Section 9 504, U.C.C. The priority creditor asserted that notification was not necessary because the cattle constituted collateral which was perishable or which threatened

to decline speedily in value. The federal district court rejected this assertion because two weeks had passed between the time the priority creditor was requested to take possession of the cattle and the time at which the sale of the cattle occurred. The federal district court stated:

"Those two weeks would have been ample for notification to the United States [the junior lienholder] and for the United States to have occasion to protect its interest in the cattle." 336 F.Supp. at 1103.

We conclude, as a matter of law, that Towner was required to give Hansen notice prior to its sale of the farm machinery and livestock collateral. As part of its instructions to the jury, the trial court stated:

"Whether Albert Hansen was entitled to notice is a question of fact which you must determine."

This instruction was in error. The jury was not requested to return a special verdict, and it is therefore impossible to know whether or not the jury determined that notice was required. Consequently, Hansen is entitled to a new trial at which the trier of fact is instructed that, pursuant to Subsection 3 of Section 41–09–50, N.D.C.C., Towner was required to give Hansen reasonable notification prior to the disposition of the collateral.

Hansen asserts that Towner's failure to give notice prior to the disposition of the collateral should result in its being absolutely barred from receiving a deficiency judgment.

The effect of a secured creditor's failure to give notice prior to the disposition of collateral was determined by this Court in *State Bank of Burleigh County Trust Company v. All-American Sub, Inc.*, 289 N.W.2d

772 (N.D.1980). Writing for a unanimous Court, Justice VandeWalle stated in part with regard to this issue:

"Examination of decisions in other jurisdictions reveals two conflicting lines of authority. One line, as expressed in *Bank of Gering v. Glover*, 192 Neb. 575, 223 N.W.2d 56 (1974), holds that failure to give notice of intended disposition precludes the recovery of a deficiency judgment.

\* \* \* \* \* \*

"The other line, as expressed in *Levers v. Rio King Land & Inv. Co.*, 93 Nev. 95, 560 P.2d 917 (1977), holds that a creditor's misconduct is not an absolute bar to deficiency. Instead, it will be presumed the collateral had a fair market value equal to the amount of the debt and no deficiency will be allowed unless the creditor overcomes this presumption by producing evidence that the fair market value of the collateral was less than the outstanding debt.

\* \* \* \* \* \*

"We believe the second line of cases expresses the better rule." 289 N.W.2d at 779–780. (Footnotes omitted.)

Hansen contends that the instant case is distinguishable from *All-American Sub, supra*, because that case involved businessmen dealing at arms length whereas in the instant case Towner, a business entity, is dealing with Hansen who portrays himself as a mere farmer-rancher without the same level of business expertise as Towner. On that basis of distinction Hansen urges this Court to adopt, in the instant case, the view that upon failure to give notice of sale a secured creditor is absolutely barred from receiving a deficiency judgment.[2]

---

2. During oral argument, counsel for Hansen also urged this Court to follow the view espoused by the Delaware Supreme Court in *Wilmington Trust Company v. Conner*, 415 A.2d 773 (Del.1980), that a creditor's failure to provide reasonable notification of sale results in an absolute bar to receipt of a deficiency judgment. The Delaware court embraced the absolute bar theory under Article 9 of the U.C.C. in view of a long line of Delaware cases which applied that theory under the Uniform Conditional Sales Act. In view of this Court's rejection of the absolute bar theory in *All-American Sub, supra*, we disagree with Hansen's assertion that the pre-U.C.C. case of *Heaton v. Hoerr*, 66 N.D. 430, 266 N.W. 261 (1936), compels us to now adopt such theory under the rationale of *Conner, supra*.

Assuming, for purposes of argument, the correctness of Hansen's assertion that the instant case does not involve an arms length dealing between businessmen, we believe the approach used in *All-American Sub, supra,* should be followed in the instant case. The approach urged by Hansen, to absolutely bar any deficiency judgment upon failure to give notice, might often cause a harsh and punitive result disproportionate to the creditor's misconduct. In the instant case, for instance, Hansen urges that Towner be barred from receiving a deficiency judgment of more than $200,000 because of its failure to give notice even though a jury might find such amount due and owing after crediting Hansen with the fair market value of the collateral sold. We do not believe that the Uniform Commercial Code, which was written in a spirit of commercial reasonableness, would countenance such an onerous result without statutory language expressly mandating it, and Subsection 1 of Section 41–01–06, N.D. C.C., [1–106, U.C.C.], reflects this view with the following language:

"41–01–06. (1–106). *Remedies to be liberally administered.*—1. The remedies provided by this title shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special nor penal damages may be had except as specifically provided in this title or by other rule of law."

Subsection 1 of Section 41–09–53, N.D.C.C., [9–507, U.C.C.] provides that a debtor may recover "any loss caused by a failure to comply with the provisions of this part." However, there is no language in the commercial code which provides a remedy of punitive damages nor one which would bar a deficiency judgment upon failure to give notice or otherwise comply with the default provisions of the code.

 The approach adopted by this Court in *All-American Sub* does not impose

as harsh a remedy against a creditor as would the remedy sought by Hansen, nor does it, however, permit a secured creditor to fail to give notification of sale with impunity. If the collateral is disposed of without prior notice to the debtor, the creditor cannot obtain a deficiency judgment unless it meets its burden of overcoming the presumption that the collateral had a fair market value at least equal to the amount of the indebtedness. Upon overcoming such presumption the secured creditor will only be allowed to recover a deficiency for the lesser of: (a) the difference between the indebtedness and the fair market value of the collateral sold, or (b) the difference between the indebtedness and the actual amount received upon sale of the collateral.[3] In this regard, the secured creditor cannot overcome the presumption by merely introducing evidence of the value received from the disposition of the collateral. *See, Hall v. Owen County State Bank,* 370 N.E.2d 918 (Ind.App.1977); *Community Management Association of Colorado Springs, Inc. v. Tousley,* 32 Colo.App. 33, 505 P.2d 1314 (1973); *Barker v. Horn,* 245 Ark. 315, 432 S.W.2d 21 (1968).

 In *Hall, supra,* the Indiana Court of Appeals stated:

"... when a secured creditor disposes of collateral without proper notice under IC 1971, 26–1–9–504(3), he must then prove, in his action for a deficiency judgment, that the reasonable value of the collateral at the time of the sale was less than the amount of the debt.

"In meeting the burden outlined above, the creditor may not merely rely on the value which he received from the repossession sale. We agree with the Arkansas Supreme Court that 'it is only where the sale is conducted according to the requirements of the code that the amount received or bid at a sale of collateral is evidence of its true value in an action to recover a deficiency.' *Universal C.I.T. Credit Corp. v. Rone* (1970), 248 Ark. 665, 669, 453 S.W.2d 37, 39–40.

**3.** Of course, in computing the proceeds received from the sale of the collateral the secured creditor is allowed to deduct the reasonable expenses of the sale and other items as provided by Subsection 1 of Section 41–09–50, N.D.C.C., [9–504, U.C.C.].

"Furthermore, the secured party may not rely solely on testimony of his credit manager or his other employees as to their opinions of the fair value of the collateral. Instead, the creditor must introduce other additional credible objective evidence of value." 370 N.E.2d at 928.

We agree with this reasoning of the Indiana Court of Appeals. Accordingly, in order to meet its burden in this regard, Towner must introduce credible evidence of the fair market value of the collateral other than the price received for it and other than the opinions of its own agents or employees.

■ The trial court in the instant case instructed the jury as follows:

"If you should find that the disposition of the collateral by the State Bank of Towner was not commercially reasonable or, that Albert Hanson was entitled to, and did not receive reasonable prior notice of such disposition, the State Bank of Towner must establish by a preponderance of evidence that the collateral disposed of by them would not have brought enough to satisfy any deficiency remaining after the sale of such collateral."

No additional instructions regarding this issue were given to the jury. Consequently, we conclude that the instructions inadequately apprised the jury of the presumption which arose, as a matter of law, upon Towner's failure to give notice of sale to Hansen. The instructions also failed to adequately apprise the jury how to determine the amount of deficiency, if any, to which Towner may be entitled. On remand, the trier of fact should be fully instructed upon these matters in accord with the views expressed in this opinion.

■ Hansen also asserts that Towner failed to dispose of the collateral in a "commercially reasonable" manner and contends that as a result Towner should be absolutely barred from receiving a deficiency judgment. Pursuant to Section 41–09–50, N.D.C.C., [9–504, U.C.C.], every aspect of the collateral disposition must be performed in a commercially reasonable man-

ner. If the secured creditor complies with the default provisions of the commercial code, including a commercially reasonable disposition of the collateral, it is entitled to a deficiency judgment of the difference between the indebtedness and the amount of proceeds received from disposition of the collateral. However, if the secured creditor fails to dispose of the collateral in a commercially reasonable manner we conclude that the same result should occur as in the case where the secured creditor fails to give reasonable notice of sale; thus, a presumption arises that the fair market value of the collateral is at least equal to the entire indebtedness, and the secured creditor must overcome this presumption in order to receive a deficiency judgment. *See, Hodges v. Norton*, 29 N.C.App. 193, 223 S.E.2d 848 (1976); *Clark Leasing Corp. v. White Sands Forest Products, Inc.*, 87 N.M. 451, 535 P.2d 1077 (1975). If the secured creditor meets this burden by proving that the fair market value of the collateral is less than the indebtedness, the secured creditor is entitled to a deficiency judgment for the lesser of: (a) the difference between the indebtedness and the fair market value of the collateral sold, or (b) the difference between the indebtedness and the amount received upon disposition of the collateral.[4]

Hansen has raised certain other issues on appeal which, in view of the reversal and remand for a new trial, this Court need not consider. *Hospital Services v. Brooks*, 229 N.W.2d 69, 71 (N.D.1975).

The judgments of the district court are reversed and the cases are remanded for a new trial in accord with the views expressed in this opinion.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.

■

---

4. *See,* footnote 3 with regard to computing the deficiency amount.