**OCEAN NATIONAL BANK OF KENNEBUNK**

v.

**Robert P. ODELL**[1].

Supreme Judicial Court of Maine.

Argued March 9, 1982.

Decided April 29, 1982.

---

**1.** Sea Crafters, Inc., was named as a defendant in the proceedings below but has not appealed from the judgment of the Superior Court. We therefore delete its name from the caption so that the caption will accurately reflect the parties actually before this Court.

Crowley & Crowley, Robert E. Crowley (orally), Biddeford, for plaintiff.

Waterhouse, Carroll & Cyr, Robert B. Woodman (orally), Biddeford, Cope, Cope & Carlisle, Gerald S. Cope, Portland, for defendant.

Before McKUSICK, C. J., GODFREY, NICHOLS, ROBERTS, and WATHEN, JJ., and DUFRESNE, A. R. J.

ROBERTS, Justice.

The defendant, Robert P. Odell, appeals from a judgment of the Superior Court, York County, entered in favor of the plaintiff, Ocean National Bank (Ocean). Following a non-jury trial, the Superior Court found that Ocean was entitled to recover the deficiency on a promissory note after sale of collateral securing the note plus its attorneys' fees. On appeal, Odell contends that the trial court erred in finding (1) that the promissory note was a demand note; (2) that Odell was not entitled to notice prior to the disposition of the collateral; (3) that the sale of the collateral was made in good faith and in a commercially reasonable manner and (4) that Odell was liable for attorneys' fees incurred in obtaining the deficiency judgment. We vacate the award of attorneys' fees but affirm the judgment of the Superior Court in all other respects.

## I. Factual Background

In June 1978, Odell signed, as president of R.P.O. Inc., and individually, a document entitled "Demand Note." The note provided that the undersigned promised to pay Ocean on demand the sum of $32,000 with interest at the rate of 11% per annum. It also provided for monthly payments for a period of sixty months at $695.76 a month.[2] Corporate stock, owned by Odell, in several corporations was given as partial security for the loan. The purpose of the loan was to purchase the assets of Sea Crafters, Inc.

Beginning in October 1978, payments on the note were not timely made in that they were a few days to a month late. As of December 1979, the loan was two months in arrears. At that point, Mark Mickeriz, a commercial loan officer for Ocean, contacted Odell. Odell, who lives out of state, referred Mickeriz to his attorney in Maine, Robert Woodman.

Mickeriz spoke with Woodman on December 13, 1979. Woodman told him that the corporation was being liquidated and that he and Odell would meet with the loan officer before the end of the year to discuss payment of the loan. Woodman also requested that he be contacted before the bank did anything with the collateral. On December 28, 1979, the loan officer again spoke with Woodman. Woodman advised Mickeriz that Odell would not be in Maine until mid-January. Woodman may have also repeated his request not to sell the stock until he was notified.

In his two conversations with Woodman and his one conversation with Odell, Mickeriz did not indicate that the entire unpaid balance of the note was due and payable or that the collateral might be sold. The notices sent when payments were overdue did not suggest that the note was fully due. One notice, however, entitled "Notice to Consumer" indicated that the obligors were in default on the note.

---

2. The note at issue, although prepared on a demand note form, contains a typed repayment schedule extending over a sixty-month period and a due date commensurate with the final payment under this schedule. As is explained in Part II of this opinion, we need not decide the question of the precise nature of the instant obligation and express no opinion thereon.

Following the second telephone conversation with Woodman and on the advice of bank counsel, Ocean sold the corporate stock serving as collateral through the brokerage house of Kidder Peabody. Some of the securities were sold on December 31, 1979; the others were sold on January 2, 1980. No effort was made to contact either Woodman or Odell before Ocean sold the stock. Since the proceeds from the sale were insufficient to cover the outstanding indebtedness, the instant suit was commenced.

## II. *Characterization of Note*

The trial court in its findings made pursuant to a Rule 52(a) request by the defendant found that Odell had signed a demand note. The court further found that Odell had admitted the note was of such character in his answer to the complaint and that the issue of the character of the note was waived because it had not been raised until after the close of evidence. Odell claims on appeal that the note was not payable on demand but was an installment note without any effective acceleration clause, and in any event that the record was devoid of any evidence of a demand for payment in full. We need not reach the merits of the defendant's arguments because we agree with the trial justice that the question of whether the full amount was due has been waived by Odell's failure either to seek its inclusion in the pretrial order or to raise it at trial.

■ The pretrial order by delineating the issues to be litigated at trial in effect supersedes the pleadings and controls the subsequent course of a civil action. M.R. Civ.P. 16(c)(3); *Taylor v. Richardson*, Me., 432 A.2d 1307, 1309 (1981); Field, McKusick & Wroth, *Maine Civil Practice* 148 (1981 Supp.). An issue not raised in the pretrial order is treated as waived at both the trial and the appellate level of the proceedings. *Taylor*, 432 A.2d at 1309; *Parsons v. Beaulieu*, Me., 429 A.2d 214, 218 n. 4 (1981). Thus, counsel for both parties are well advised to take the steps necessary to assure that the specific issues sought to be resolved by the court are contained in the pretrial order.

■ In the instant case, the pretrial order specified the following as the issues that were to be tried:

1. Are defendants obligated to the plaintiff for counsel fees because of insufficiency of security?

2. Was there a contractual obligation on the part of the plaintiff to notify the defendant prior to the sale of partial security which is listed in the note?

(a) Did the bank act in good faith in any event?

(b) Was the sale of the security commercially reasonable?

No issue is raised concerning the character of the note as either a demand or an installment obligation. More important, the significant question underlying this issue, namely, whether the full amount of the note was due at the time of the sale of the collateral, is not raised by the pretrial order, nor was the question actually litigated by consent at trial.

By failing to raise the issue the defendant has waived the right to argue on appeal error in the Superior Court's characterization of the note or determination that it was due in full. Accordingly, we must assume, in examining the other arguments raised on appeal, that the entire unpaid balance of the note was due and payable at the time of the sale of the collateral.

## III. *Notice Prior to the Sale of Collateral*

■ Odell urges that the trial court erred in finding that the defendant had waived notice prior to the sale of the collateral. In support of this position, Odell asserts that Ocean, through Mickeriz's phone conversations with Woodman, agreed to give notice prior to the disposition of the stock. The defendant also contends that the Uniform Commercial Code prohibits the waiver of notice of sale.

The trial judge specifically found that Ocean "made no representations, agreements or enforceable undertakings to either defendant that ... notice would be given prior to the sale of said stock." The evidence of record does not require a contrary

finding in light of the lack of compelling evidence suggesting the existence of an agreement, either expressed or implied. Moreover, the testimony of the loan officer supports the finding of the trial court. We, therefore, find no merit in Odell's contention that Ocean agreed to notify the defendant prior to the sale of the collateral.

■ We also reject the defendant's contention that the Code prohibits waiver of the right to receive notice of the sale of the collateral. Section 9–504(3) does not require that notice be given to the debtor when the collateral is "of the type customarily sold on a recognized market." [3] Odell concedes that the recognized market exception applies in the instant case. He contends, however, that despite the effect of this exemption, notice of the intended disposition of the collateral is required so that the debtor may exercise his right of redemption under section 9–506.[4]

Odell's argument is unpersuasive. Section 9–506, in direct contrast to other provisions of the Code, contains no proviso explicitly requiring notice to the debtor. That section does, however, refer back to section 9–504 in that the right of redemption continues only until the disposition of the collateral under section 9–504. Since the debt-

or's rights pursuant to the recognized market exception do not include notice "of . . . any public sale or . . . of the time after which any private sale or other intended disposition is to be made," we conclude that notice is not necessary with respect to the right of redemption when the recognized market exception is applicable.

■ We see no reason to read a notice requirement into section 9–506 given the type of transactions within the scope of the recognized market exception. One of the purposes for the notice requirement of section 9–504(3) is to afford the debtor the opportunity to bid or encourage others to bid on the collateral so as to insure receipt of a fair sales price. *State Bank of Towner v. Hansen*, 302 N.W.2d 760, 765 (N.D.1981); *Herman Ford-Mercury, Inc. v. Betts*, 251 N.W.2d 492, 495 (Iowa 1977); 1A P. Coogan, H. Hogan & D. Vagts, *Secured Transactions Under the Uniform Commercial Code* § 8.06[2] at 935 (1981) (Bender's Uniform Commercial Code Service); J. White & R. Summers, *Uniform Commercial Code* 1109 (2d ed. 1981). Sales on a recognized market are exempted from the notice requirement because the price set in these markets represents the fair market value of

**3.** 11 M.R.S.A. § 9–504(3) provides:

Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor if, except in the case of consumer goods, he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods, no other notification need be sent. In other cases, notification shall be sent to any other secured party from whom the secured party has received, before sending his notification to the debtor or before the debtor's renunciation of his rights, written notice of a claim of

an interest in the collateral. The secured party may buy at any public sale and, if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations, he may buy at private sale.

**4.** 11 M.R.S.A. § 9–506 provides:

**Debtor's right to redeem collateral**

At any time before the secured party has disposed of collateral or entered into a contract for its disposition under section 9–504 or before the obligation has been discharged under section 9–505, subsection (2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses.

.. 

the collateral. *See Kitmitto v. First Pennsylvania Bank, N.A.,* 518 F.Supp. 297, 302 (E.D.Pa.1981); *State Bank of Towner,* 302 N.W.2d at 765; *Community Management Association v. Tousley,* 32 Colo.App. 33, 37, 505 P.2d 1314, 1316 (1973); *Nelson v. Monarch Investment Plan of Henderson, Inc.,* 452 S.W.2d 375, 377 (Ky.1970).[5] Thus, the inducement to the debtor to protect his interests by bidding on the goods or seeking their redemption is reduced where he will assuredly receive the market price of his collateral. *See Marine Midland Bank-Rochester v. Vaeth,* 88 Misc.2d 657, 659, 388 N.Y.S.2d 548, 550 (1976) (reason and need for notice disappears when recognized market exception applies). Further, the nature of the property involved when the recognized market exception applies will in most instances be fungible, *see* 11 M.R.S.A. §§ 1–201(17), 8–107, Comment 1; *compare Norton v. National Bank of Pine Bluff,* 240 Ark. 143, 146, 398 S.W.2d 538, 540 (1966) (recognized market exception applies where sales involve many items so similar that differences immaterial or nonexistent) *with Nelson,* 452 S.W.2d at 377 (no recognized market for repossessed cars, they vary widely in make, style and condition), thereby lessening the attractiveness and importance to the debtor of reacquiring the collateral by redemption. *Cf. Camden National Bank v. St. Clair,* Me., 309 A.2d 329, 333 (1973) (notification allows debtor to reacquire collateral *in specie*). On this point, it is significant to note that Odell could regain the securities lost through the sale by purchasing them on the appropriate securities exchanges.

In short, given the lack of a specific notice provision within section 9–506 or any sound policy reason for its adoption, we cannot conclude that notice was required in the instant case. We do not suggest, however, that Odell did not have a right to redeem, albeit unexercised, in the instant matter.

### IV.  Good Faith and Commercial Reasonableness

■ "The principal limitation on the secured party's right to dispose of collateral is the requirement that he proceed in good faith and in a commercially reasonable manner." (Citations omitted.) 11 M.R.S.A. § 9–507, Comment 1, *see* 11 M.R.S.A. §§ 1–203; 9–504. On appeal, Odell argues that the activities of Ocean were violative of these basic tenets of commercial practice. The two points available to the defendant under the circumstances of this appeal are: (1) the failure to give notice of the sale of the collateral when such action was requested by Woodman; and (2) the sale of the securities in two installments. We find these circumstances do not require the reversal of the Superior Court's findings that Ocean acted in good faith and in a commercially reasonable manner.

As noted by Odell, section 9–504(3) requires that "every aspect of the disposition [of collateral] including the method, manner, time, place and terms must be commercially reasonable." However, section 9–

---

**5.** In their treatise on the Uniform Commercial Code, Professors White and Summers aptly describe the underlying basis of the recognized market exception:

>The other exception to the notice requirement occurs when the collateral is "customarily sold in a recognized market." Here the notion is that the debtor does not need the protection afforded by notice because the price set by independent market forces is presumptively "commercially reasonable." Certainly, the New York Stock Exchange and the bond and commodity markets are "recognized markets." Such places are arenas of *pure competition in the classical sense of the* term. The forces of supply and demand determine price and the valuation of goods and such market places are relatively free from

>human connivance and manipulation. On the other hand, the exception to the notice requirement for sales on recognized markets does not encompass sellers of hard goods. Used cars (at least before 1970!), and the other kinds of hard goods whose used market is even more uncertain have been found to be items not "customarily sold in a recognized market." Any transaction which involves haggling over price or competitive bidding should not be considered as one conducted on a recognized market, and the secured party is properly relieved of his obligation to give notice of resale only when neutral market forces rather than negotiations between buyer and seller determine price.

>(Footnotes omitted.) J. White & R. Summers, *Uniform Commercial Code* 1111 (2d ed. 1981).

507(2) provides that sales in any recognized market *are* commercially reasonable. In the instant case, the Superior Court found that the sale of the collateral was made in a recognized market, through an established broker and in a commercially reasonable manner. We find nothing in the two factors noted above that undermines either the findings of the Superior Court or the statutory recognition of commercial reasonableness accorded to sales on a recognized market.

We also find unpersuasive Odell's claim that Ocean did not act in good faith. The plaintiff by the terms of section 9–504(3) was not required to give notice of the sale and was permitted to sell the collateral in installments. We find no lack of good faith in Ocean acting as authorized by the Code. Odell's request that he be notified prior to the sale did not in this case supplant the plaintiff's rights under the Code. Inasmuch as the Superior Court's findings are not clearly erroneous, we uphold them on appeal.

### V. *Attorneys' Fees*

 Under 11 M.R.S.A. § 9–504(1), the proceeds from the disposition of collateral may be applied to reasonable attorneys' fees, "to the extent provided for in the agreement and not prohibited by law." We find that the trial court erred in its award of attorneys' fees to Ocean because such an award was not contemplated by the agreement of the parties. We need not address whether such an award is prohibited by law.

The relevant provision of the note provides:

> Any balance of the net proceeds of such sale [of security] remaining after paying all liabilities of the undersigned ... and after paying *all costs and expenses of collection, storage, custody, sale and delivery, including* reasonable attorneys' fees, shall be returned to the undersigned.

(Emphasis added.) The clear import of this language is that attorneys' fees are only available as part of the costs of selling the collateral. We interpret the word "collection" in this context as referring to the

collecting or gathering-up of the security. No evidence was presented at trial suggesting a different intent. Since the note by its own terms limits attorneys' fees to those incurred in disposing of the collateral, and the Code limits the right to recover attorneys' fees to those provided by agreement, we can only conclude that an award of attorneys' fees is improper, where, as here, counsel fees are sought for the cost of seeking a judgment on the deficiency of an overdue note following the sale of the collateral.

The entry is:

Judgment of the Superior Court vacated with respect to the award of attorneys' fees.

Judgment of the Superior Court affirmed in all other respects.

All concurring.