SHARON KRAMER *et al.*, Plaintiffs-Appellees, v. EXCHANGE NATIONAL BANK OF CHICAGO, Defendants-Appellants (La Salle National Bank, Trustee, Defendant).

First District (3rd Division)   No. 84—2176

Opinion filed December 18, 1985.—Rehearing denied February 7, 1986.

Schwartz, Cooper, Kolb & Gaynor, of Chicago (David P. Leibowitz, Franklin S. Schwerin, and Robert P. Handler, of counsel), for appellants.

William J. Harte, Ltd., of Chicago (William J. Harte, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

As the result of Arnold and Sharon Kramer's default on a loan, Exchange National Bank acquired title to certain property at a non-judicial sale where Exchange was the successful bidder. The note involved in the defaulted loan recited that it was specifically secured by property in New York and Illinois. Exchange brought a forcible entry and detainer action to obtain possession of the Illinois property. Prior to trial on Exchange's action for possession, the Kramers filed a complaint to enjoin the forcible entry action and for other relief. The two actions were consolidated. Both sides sought summary judgment, and the trial court granted summary judgment in favor of the Kramers. In so holding, the trial court found that, unknown to the Kramers, Exchange materially altered the note after it had been executed by the Kramers and delivered to Exchange. The court thus held that the note and sale were voided. Exchange appeals.

On June 1, 1972, La Salle National Bank became the trustee of a land trust which held title to a single-family home in Evanston, Illinois. The sole beneficiaries were the Kramers, who reside in the home. On February 13, 1973, the Kramers assigned to Exchange 100% of their beneficial interest in the trust which held title to their home. The assignment was collateral security for loans made by Exchange to the Kramers.

In 1978, Arnold Kramer, an attorney, applied to Exchange for a loan for American Properties Corporation (APC) and Ferridge Properties of New York, companies for which Kramer was the sole shareholder and president. On September 25, 1978, in anticipation of the loan, the Kramers entered into a security agreement with Exchange. The agreement stated that the Kramers gave Exchange a further collateral assignment of beneficial interest in the land trust to secure the payment of "all obligations of the [Kramers and APC] *** whether now or hereafter existing, due or become due, direct or indirect, absolute or contingent, joint and/or several, and any and all extensions and renewals of any of the foregoing all collectively herein called (the 'Debt') ***."

On the same day, the Kramers also signed a "continuing guarantee" in consideration of "financial accommodation concurrently herewith being afforded or hereafter to be afforded to" APC. The Kramers guaranteed payment to Exchange of "all indebtedness, obligations and liabilities of every kind and nature" of APC to Exchange, "whether now existing or hereafter created or arising, direct or indirect, absolute or contingent, or joint or several *** whether through *** direct loan or as collateral." The guaranty was

deemed to be "continuing, absolute and unconditional, and shall remain in full force and effect *** until written notice of its discontinuance ***." Finally, the guarantee stated that it was a security interest in the beneficial interest in the land trust and that Exchange could set off "indebtedness at any time credited by or due from the Bank to any of the undersigned" and that Exchange had the rights of a secured party under the Uniform Commercial Code of Illinois, including "the right to sell or otherwise dispose of said property."

Exchange then loaned $300,000 to APC, as evidenced by a note dated November 30, 1979 (the APC note). The APC note lists, as specific collateral, a trust deed on an individual building in Buffalo, New York, owned by Ferridge. The APC note also lists as specific collateral "Assignment of Beneficial Interest in La Salle National Bank Trust No. 44263," which is the trust that holds title to the Kramer home. Exchange admits adding the quoted language to the APC note after the Kramers signed and delivered the note. The Kramers and APC subsequently defaulted.

In 1981, the Kramers filed a bankruptcy action in Buffalo, New York. That filing created an automatic stay on the foreclosure proceedings brought by Exchange regarding the New York real estate. On August 13, 1981, Exchange filed a complaint for relief from the automatic stay. After a final hearing held in January 1984, the court ordered the stay vacated. The New York bankruptcy court found that the APC note was "valid and binding." The court recognized that the beneficial interest in the land trust in Illinois was collateral for the APC note.

In Illinois, Exchange advertised a public UCC sale of the beneficial interest in the land trust to be held on June 23, 1981. On June 22, the Kramers filed a bankruptcy petition in the Northern District of Illinois. The filing created an automatic stay of the UCC sale. On August 7, 1981, Exchange filed a complaint in the bankruptcy court asking for relief from the automatic stay. The court heard testimony from seven witnesses, including Arnold Kramer, and received documentary evidence. The bankruptcy court found that APC and the Kramers owed Exchange $431,676.85 on the APC note. In its order, the court stated, "As collateral security for the indebtedness of Exchange, the debtors granted to Exchange a security interest in the beneficial interest in Trust No. 44263 of La Salle National Bank of Chicago, the res of said trust being a single family residence located at 926 Edgemere Court, Evanston, Illinois." The court continued the hearing on the request to vacate the automatic stay on the condition that the Kramers pay to Exchange current interest on the debt. On

November 15, 1982, the bankruptcy court found the Kramers in default on the current interest payments and vacated the automatic stay of the sale of the beneficial interest in the land trust. On May 3, 1983, with the Kramers' attorney present, Exchange conducted the sale. Exchange was the highest bidder, and purchased the beneficial interest for $120,000.

After Exchange sought possession of the Illinois home, the Kramers filed their complaint for injunctive relief, claiming that the sale of the beneficial interest was void because it was not in compliance with the applicable code provisions. The actions were consolidated. Thereafter, the trial court granted the Kramers' motion for summary judgment, finding that the sale of the beneficial interest was "void and of no legal force and effect" because Exchange materially altered the note after execution and delivery by adding the beneficial interest as specific collateral. The court also declared that the APC note was void and unenforceable.

■ On appeal, Exchange contends that the Kramers are precluded, under the doctrine of collateral estoppel or *res judicata*, from raising the previously litigated issue of the note's validity; and that the trial court erred in finding that the APC note was materially altered.

In our view, the dispositive issue on appeal is whether Exchange materially altered the APC note. The Illinois Commercial Code provides for the discharge of a debt where the note has been altered by the holder both materially and fraudulently unless the other party assents or is precluded from asserting the defense. (Ill. Rev. Stat. 1983, ch. 26, par. 3—407(2)(a).) We find no material alteration or fraud in the present case.

An alteration to commercial paper is material when there is a change in "the writing as signed, by adding to it or by removing any part of it." (Ill. Rev. Stat. 1983, ch. 26, par. 3—407(1)(c).) On the APC note, on blank lines under the heading "specific collateral," Exchange added the words "Assignment of Beneficial Interest in La Salle National Bank Trust No. 44263" after the words "Trust Deed on property commonly known as 1200 Niagara Street, Buffalo, New York."

The assignment to Exchange of the Kramers' beneficial interest in the land trust which held title to the Evanston home was meant to cover all obligations of the Kramers and APC "whether now or hereafter existing." The entire interest was originally assigned to Exchange in 1973, and further assigned to Exchange in 1978 along with a "continuing guarantee" which listed the beneficial interest as

security. The documents in the record which portray the relationship between Exchange and the Kramers indicate that the beneficial interest was continually used as security collateral. Thus, we agree with Exchange that the words added to the APC note merely reflected the existing security arrangement and did not materially alter the note itself.

A change is fraudulent when there is an attempt to impose a new obligation. (*Hutcheson v. Herron* (1970), 131 Ill. App. 2d 409, 266 N.E.2d 449, citing the Illinois Committee Comment to Ill. Rev. Stat. 1963, ch. 26, par. 3—407(2)(a).) In *Hutcheson*, the debtor admitted he was obligated to pay the notes on demand. The creditor's addition of language demanding payment within a certain period, therefore, did not increase the debtor's obligation. Here, the Kramers were obligated to pay the notes or risk losing whatever property Exchange held as security. Exchange's addition of language describing the existing security—the Illinois property listed on the 1978 security agreement and the 1979 "continuing guarantee"—did not increase the Kramers' obligation. It merely clarified the property at stake if the Kramers defaulted. The language added by Exchange did not constitute a material alteration of the note, and the trial court erred in holding otherwise.

■ Pointing out that their beneficial interest in the Evanston home was personal property, the Kramers argue that section 9—501(4) of the Illinois Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 9—501(4)) bars a sale of personal property under the Code procedure when Exchange has elected to proceed simultaneously as to both the real and personal property which secured the APC note. Section 9—501(4) states:

> "If the security agreement covers both real and personal property, the secured party *may* proceed as to the personal property or he *may* proceed as to both the real and personal property in accordance with his rights and remedies in respect to the real property in which case the provisions of this Part do not apply." (Emphasis added.)

The Illinois Code Comment states that: "This subsection merely gives the secured party an option * * * as to whether he will proceed under this Part as to the personal property or entirely under the law applicable to real estate security." (Ill. Ann. Stat., ch. 26, par. 9—501(4), Illinois Code Comment, at 320 (Smith-Hurd 1974).) The UCC Official Code Comment 5 states that:

> "In the interest of simplicity and speed subsection (4) permits, *although it does not require*, the secured party to proceed as

to both real and personal property in accordance with his rights and remedies in respect of the real property. *** [T]his Act does not determine whether the secured party can proceed against the real estate alone and later proceed in a separate action against the personal property in accordance with his rights and remedies against the real estate. By such separate actions the secured party 'proceeds as to both,' and this Part does not apply to either action." Ill. Ann. Stat., ch. 26, par. 9—501, Uniform Commercial Code Comment, at 322 (Smith-Hurd 1974).

In discussing this issue, both sides refer us to *Hildner v. Fox* (1974), 17 Ill. App. 3d 97, 308 N.E.2d 301, where the defendant repossessed and sold the personal property which secured plaintiffs' debt without giving plaintiffs notice of the sale as required under the personal property provisions of the Illinois Commercial Code. The holding in *Hildner*, however, does nothing more than refer to the two options set up in the Code, notes that the *Hildner* defendant chose to proceed against only the personal property, and finds that the defendant therefore was required to comply with the Code's notice requirements. In the one paragraph devoted to analyzing section 9—501(4), the *Hildner* court does not address the issue in the present case, *i.e.*, whether a party proceeding against both realty and personalty in separate actions must proceed under real property law.

Illinois courts have noted the Code's provision which gives a creditor the right to pursue any one of a number of remedies against a debtor until the debt is satisfied. (*Olsen v. Valley National Bank* (1968), 91 Ill. App. 2d 365, 234 N.E.2d 547.) Section 9—501(1) states: "When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this Part and *** those provided in the security agreement. *** The rights and remedies referred to in this subsection are cumulative." (Ill. Rev. Stat. 1983, ch. 26, par. 9—501(1).) We note that the security agreement at issue here provides Exchange with the right to sell the beneficial interest under the Illinois Uniform Commercial Code.

Courts in other jurisdictions have refused to interpret section 9—501(4) so as to reduce the rights of secured creditors, and instead interpret section 9—501(4) so as to permit the secured party to proceed against the personalty under the Code and against the realty in a separate proceeding. *Wiley v. Bank of Fountain Valley* (Colo. App. 1981), 632 P.2d 282; *State Bank of Towner v. Hansen* (N.D. 1981), 302 N.W.2d 760. See also 69 Am. Jur. 2d, *Secured Transactions* sec.

559, at 450 n.80 (1973), which states: "Whether such separate actions may be taken is not entirely clear, although it would seem that the secured party may use the Uniform Commercial Code provisions to foreclose or otherwise proceed against personal property, and may use real-estate law to take like action with respect to realty."

We find this construction of section 9—501(4) to be reasonable, especially in the present case where a different construction would require Exchange to proceed in a single action against New York real property and Illinois personal property. Thus, we find that section 9—501(4) gives the secured party the option of proceeding in one action (in which case he would need to follow real property procedure), or proceeding in two separate actions (in which case the action involving personal property must comply with the Code requirements.) The separate real property action would not need to comply with the Code because the Code specifically exempts real property collateral. (Ill. Rev. Stat. 1983, ch. 26, par. 9—104.) Exchange was not required to proceed under real property law.

■ The Kramers also maintain that the sales price of the beneficial interest in the land trust was inadequate. However, the UCC states that: "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." (Ill. Rev. Stat. 1983, ch. 26, par. 9—507(2).) Mere inadequacy of price, in the absence of fraud, mistake or illegal practices, does not vitiate a sale. (*Chicago City Bank & Trust Co. v. Wilson* (1980), 86 Ill. App. 3d 452, 407 N.E.2d 964.) No fraud, mistake or illegal practices occurred here.

In view of our holding, it is unnecessary to consider Exchange's other contention that the Kramers are precluded, under the doctrine of collateral estoppel or *res judicata*, from raising the previously litigated issue of the note's validity.

No genuine issue of material fact exists. The only issue to be decided was whether Exchange materially altered the note, which would have voided the note and the subsequent sale of the beneficial interest. As we have discussed, the note was not materially altered, and the trial court erred in granting summary judgment in favor of the Kramers. Moreover, the note and the subsequent sale were valid, thus entitling Exchange to possession of the Evanston home.

Accordingly, the order granting summary judgment in favor of Sharon and Arnold Kramer is reversed, and the cause is remanded

to the circuit court of Cook County with directions to grant judgment awarding possession of the Evanston property to Exchange National Bank of Chicago.

Reversed and remanded with directions.

McGILLICUDDY and JIGANTI, JJ., concur.