Joel C. Martin (orally), Petruccelli, Cohen, Erler & Cox, Portland, for plaintiff.

Clarke Hambley (orally), Givertz, Lunt & Hambley, Portland, for defendant.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

NICHOLS, Justice.

The Defendants, Jopet Jewelers, Inc., and John J. Peterson, appeal from the summary judgment entered February 23, 1987, against them in Superior Court (Cumberland County) finding them jointly and severally liable to the Plaintiff, Maine National Bank, on certain promissory notes. The Plaintiff cross-appeals from the Superior Court's denials, without a hearing, of its motion to amend the order entered February 23, 1987, and a simultaneous motion for a further summary judgment.

We affirm the Superior Court throughout.

Defendant Peterson was the sole stockholder of the Defendant, Jopet Jewelers, Inc., which operated a jewelry store. In connection with that business, the Defendant corporation negotiated several loans from the Plaintiff Bank and executed three separate promissory notes therefor, two of which notes Defendant Peterson endorsed.

**MAINE NATIONAL BANK**

v.

**JOPET JEWELERS, INC. et al.**

Supreme Judicial Court of Maine.

Argued Nov. 16, 1987.

Decided March 3, 1988.

These notes were further secured by the Defendants' pledge of the corporation's jewelry inventory as collateral for the loans. The corporation's store eventually failed and the corporation turned the store's jewelry inventory over to the Plaintiff bank.

After three weeks of advertising, the Plaintiff auctioned off the jewelry inventory. Approximately twenty bidders, as well as Defendant Peterson, attended the sale at a local Holiday Inn. The auctioneer first took bulk bids on the merchandise and then received individual lot bids from the floor. A bulk bid of $15,650.00 was the highest offer received and accordingly was accepted by the auctioneer.

During the public auction Defendant Peterson privately proposed to the two bank officers present that he be permitted to purchase the inventory for $1,000 more than the highest public bid. Although disappointed in the amount of that highest bid, the Bank refused Defendant Peterson's offer on the grounds that his offer was made outside of the general bidding and after the bulk bidding had ceased.

Net of commissions and costs, the auction realized for the Bank $13,243.88 which sum was applied to the obligations of the corporate borrower. This sum was applied in part to pay fully the one promissory note on which Defendant Peterson was not an endorser. The Bank then commenced this action in Superior Court against these two Defendants for the balance of their obligations on the other two notes and the Defendant corporation's liability upon an overdrawn checking account. The Plaintiff promptly moved for summary judgment on all three counts of its complaint. In support of its motion, the Plaintiff submitted a bank officer's affidavit which asserted a balance due from the Defendants of $34,036.88 plus $1,442.56 in interest as of March 1985. On October 17, 1985, the Superior Court granted the Plaintiff's motion as to Count III (for the overdrawn checking account), but denied it as to Counts I and II (for the two promissory notes given by the corporate Defendant and endorsed by the individual Defendant).

By motion dated and entered March 6, 1986, the Plaintiff bank renewed its effort to obtain summary judgment on Counts I and II. This pleading did not suggest that it was seeking a *partial* summary judgment. On April 30, 1986, after a hearing, the court granted a motion for summary judgment on Counts I and II in the amount of $35,479.44, directing counsel to prepare an appropriate order. Six weeks later the Plaintiff submitted a second affidavit of the bank officer, calculating principal and interest to that date to be $40,518.79; an affidavit of an attorney for $8,157.50 in attorney fees and $945.23 in costs; and a proposed order in the amount of $49,621.52. The court entered its order in that amount.

Ten days later the Defendants moved to amend this latest order, asserting that they had been denied due process and an opportunity to be heard on the affidavits that the Plaintiff submitted to the court long after the April 30 hearing on the second motion for summary judgment.

Almost eight months later, on February 20, 1987, the same motion justice granted the Defendants' motion to amend, vacated the June 20, 1986, order, and that day "for the reasons stated in the record" entered a new judgment against the Defendants in the amount of $35,479.44. Concluding that it was "unfair" to consider the post-hearing affidavits, the Superior Court awarded the amounts of principal and interest that were reflected in the affidavits before it at the time of the April 30 hearing. These amounts were derived directly from the bank officer's affidavit of March 19, 1985. No evidence of attorney fees or costs was presented in the affidavits before the court at the April, 1986, hearing, and the Superior Court awarded none. Nothing in the pleadings suggested that this was a *partial* summary judgment. It was a final adjudication of all that remained in the case, namely Counts I and II.

Nevertheless, on March 5, 1987, along with a motion to amend the judgment to provide that it was only a "partial judgment," the Plaintiff filed its third motion for summary judgment. The latter, supported by still more affidavits, sought in-

terest and attorney fees. On April 1, 1987, without a hearing, the court denied both of the Plaintiff's motions.

The Defendants appeal, asserting that the Plaintiff's sale of the jewelry inventory was not commercially reasonable and that the Plaintiff is, therefore, not entitled to recover from the Defendants the balance of their obligations. The Plaintiff cross-appeals, challenging the Superior Court's grant of the Defendant's motion to amend and its denial of both the Plaintiff's third motion for summary judgment and the Plaintiff's motion to amend the February judgment.

We conclude that, on the one hand the auction sale was commercially reasonable and, on the other hand, the Plaintiff bank's cross-appeal is without merit.[1]

The principal limitation on a secured party's right to dispose of collateral is the requirement that he proceed in good faith and in a commercially reasonable manner. 11 M.R.S.A. § 9–507 (1964), Comment 1, *id.* at § 1–203 (1964), § 9–504 (1986); *Ocean National Bank of Kennebunk v. Odell,* 444 A.2d 422, 426 (Me.1982). The law requires that "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." 11 M.R.S.A. § 9–504(3) (1986); 2 Spanogle, *Maine Practice: Uniform Commercial Code Form Annotated* § 9–504, form 2 (1966).

 In the case at bar, the Bank acted reasonably in every aspect with reference to its sale of the Defendants' collateral. It hired an experienced auction company to handle the proceedings. Adequate notice of the sale was given to the public through three newspaper advertisements and to Peterson personally by mail. In addition, there was a number of bidders, and the hotel location of the auction was conducive to encouraging more people to enter the bidding. The circumstance that the successful bid was lower than anticipated is insufficient to establish that the Plaintiff acted in a commercially unreasonable manner. Having thus proceeded, the Plaintiff was entitled to accept the highest bulk bid received from the public instead of Defendant Peterson's offer. Therefore, we conclude that the sale was commercially reasonable and that the Plaintiff is entitled to a summary judgment against the Defendants for the balance due it on the two promissory notes.

 The Plaintiff further contends that the Superior Court erred in denying the Plaintiffs' motion to amend the February judgment without a hearing. Because both parties presented their arguments on this motion in written memoranda, it was not error for the Superior Court to act without a hearing. *Most v. Most,* 477 A.2d 250, 261 (Me.1984); *See* M.R.Civ.P. 59(e); *Spickler v. Dube,* 463 A.2d 739, 741 (Me.1983).

There also remains the issue raised by the Plaintiff bank on its cross-appeal concerning the denial by the Superior Court of its third motion for summary judgment. It is enough for us to observe that the judgment entered on February 23, 1987, was a final judgment on all the issues presented to the court for summary judgment.

Finally, there was no abuse of discretion in the court's denial of the motion to amend the final judgment.

The entry is:

Judgment affirmed.

All concurring.

---

1. The Defendants also allege that the affidavits offered in support of the Bank's motions for summary judgment are unreliable because they are sworn to on "information and belief." We find, however, that the affidavits are made from personal knowledge and therefore comply with M.R.Civ.P. 56(e). *See Dineen v. Star Press, Inc.,* 391 A.2d 834, 835 (Me.1978).